.(Opinion published 52 N. W. Rep. 30.)

---

JOSEPH EMMERT *vs*. PETER THOMPSON *et al.*

Argued April 13, 1892.    Decided May 3, 1892.

**Subrogation—Not Dependent on Contract, Privity, or Suretyship.—** Subrogation is a mode which equity adopts to compel the ultimate payment of a debt by one who, in justice and good conscience, ought to pay it, and is not dependent upon contract, privity, or strict surety.

**Same — Volunteer or Stranger not Entitled to.—** It is a general rule, however, that the doctrine of subrogation will not be exercised in favor of a volunteer or a stranger who officiously intermeddles, such as a person who pays without any obligation so to do, or one who, without any interest to protect, liquidates the debt of another.

**Lender, When not a Volunteer or Stranger.—**Where one loans money upon real-estate security for the express purpose of paying off and discharging liens or incumbrances on the same property, expecting and believing, in good faith, that his security will, of record, be substituted. in fact, in place of that which he discharges, he is not a volunteer, a stranger, or an intermeddler, nor is the original debt or lien or incumbrance considered extinguished, if justice requires that it should be kept alive for the benefit of the person advancing the money.

Appeal by plaintiff, Joseph Emmert, from so much of a judgment of the District Court of Nobles County, *P. E. Brown,* J., entered October 19, 1891, as adjudged that defendant Cornwell be first paid $1,434.82 and interest out of the proceeds of the sale of the land described.

This action was brought to foreclose a mortgage given by William Marr and Ellen, his wife, to H. L. Emmert, plaintiff's brother, January 19, 1886, upon the northeast quarter of Section fourteen (14) and the west half of the southwest quarter of Section thirteen (13) in Township one hundred and one (101) north, of Range forty-three (43) west, in Nobles County. It was given to secure the payment of two notes, for $1,058.75 each, and dated September 30, 1885, and bearing ten per cent. interest. The mortgage was recorded January 28, 1886. H. L. Emmert soon after indorsed and sold the notes to the plaintiff. The defendants in the action were William Marr, Ellen Marr, his wife, Zelotes R. Cornwell, Peter Thompson, and F. S. Gibson. The last three were alleged to be subsequent incumbrancers.

Cornwell answered, stating that on January 20, 1888, he loaned to William Marr $1,800, and took his notes therefor, secured by a mortgage of that date on all this land, which mortgage was recorded February 21, 1888; that out of the money so loaned he, at Marr's request, paid off the prior incumbrances on the land, and had them discharged of record as follows: $841.80 to E. S. Ormsby, in satisfaction of a mortgage given him by Marr and wife June 15, 1883, on the land in Section fourteen, (14,) and $516.90 to Annie C. Hayes, in satisfaction of a mortgage given said H. L. Emmert by Marr and wife September 23, 1884, on the land in Section thirteen, (13,) and assigned by him to her January 17, 1885, and $76.12 taxes for two years on both pieces of land; that Marr represented that there was no other incumbrance on the land, and Cornwell believed him, and did not hear of this mortgage to plaintiff's brother until February, 1890; that Marr and wife were insolvent, and the land worth no more than $3,200, and he asked that he be subrogated to the rights of Ormsby and Emmert under the two mortgages he had paid; that the discharges be set aside; and that out of

the proceeds of the sale of the land he be first paid the sums paid by him to satisfy those prior liens.

The action was tried in March, 1891. The court filed its findings on August 1, 1891, and found that the facts were substantially as above stated, and directed the land to be sold, and that Cornwell be first paid $1,434.82, and interest from February 27, 1888, out of the proceeds, and that the residue be paid to the plaintiff to the amount due on his mortgage, with costs, and that the sheriff bring any surplus into court. Judgment was so entered, and plaintiff appealed.

*Daniel Rohrer,* for appellant.

Cornwell was a volunteer lender of money to Marr, and is not entitled to subrogation. *Commonwealth of Virginia* v. *State of Maryland,* 32 Md. 501; *Gadsden* v. *Brown,* Speer, Eq. 37, 41; *Downer* v. *Miller,* 15 Wis. 612; *Nolte* v. *Creditors,* 7 Mart. (N. S.) 602; *Kline* v. *Ragland,* 47 Ark. 111; *Ætna Life Ins. Co.* v. *Middleport,* 124 U. S. 534; *Shinn* v. *Budd,* 14 N. J. Eq. 234; *Suppiger* v. *Garrels,* 20 Ill. App. 625.

When money is borrowed on a mortgage to pay off a former mortgage on the same land, the fact that an intervening mortgage was overlooked in the examination of the title will not enable the lender to set up the former mortgage, after its discharge of record. *Banta* v. *Garmo,* 1 Sandf. Ch. 383; *Dingman* v. *Randall,* 13 Cal. 513; *Fievel* v. *Zuber,* 67 Tex. 275; *Sandford* v. *McLean,* 3 Paige, 117; *Unger* v. *Leiter,* 32 Ohio St. 211; *Kitchell* v. *Mudgett,* 37 Mich. 81; *Bunn* v. *Lindsay,* 95 Mo. 250.

The position that, on the facts found, Cornwell was a mere volunteer, and not entitled to subrogation, nor to the benefit in any manner of the liens he paid off, is sustained by the following additional authorities: *Felton* v. *Bissel,* 25 Minn. 15; *Wadsworth* v. *Blake,* 43 Minn. 509; *Bacon* v. *O'Connor,* 25 Tex. 213; *Barber* v. *Lyon,* 15 Iowa, 37; *Pelton* v. *Knapp,* 21 Wis. 63; *Watson* v. *Wilcox,* 39 Wis. 643; *New Jersey Midland Ry. Co.* v. *Wortendyke,* 27 N. J. Eq. 660; *Wormer* v. *Waterloo Agricultural Works,* 62 Iowa, 699; *Bank of Mobile* v. *Mobile & O. R. Co.,* 69 Ala. 305; *Hough* v. *Ætna Life Ins. Co.,*

57 Ill. 318; *Binford* v. *Adams,* 104 Ind. 41; *Fay* v. *Fay,* 43 N. J. Eq. 438; *Guy* v. *Du Uprey,* 16 Cal. 195; *Hoover* v. *Epler,* 52 Pa. St. 522; *Ætna Ins. Co.* v. *Reed,* 33 Ohio St. 292.

*Warner, Richardson & Lawrence* and *Geo. W. Wilson,* for respondent.

Cornwell was on the facts entitled to subrogation. The conclusions of law were warranted by the findings of fact. Upon the facts found, Cornwell's equities and the appropriate remedy for them were clear upon the current of authority at this date. Upon this point we cite many authorities from many states simply because adverse decisions now obsolete can be adduced, and we seek to show what the weight and current of authority now is upon this point. Har. Subr. §§ 811, 816, 819; *Payne* v. *Hathaway,* 3 Vt. 212; *Detroit Fire & Marine Ins. Co.* v. *Aspinall,* 48 Mich. 238; *Vallie* v. *Fleming,* 29 Mo. 152; *Levy* v. *Martin,* 48 Wis. 198; *Lockwood* v. *Bassett,* 49 Mich. 546; *Barnett* v. *Griffith,* 27 N. J. Eq. 201; *Homœopathic Mut. Life Ins. Co.* v. *Marshall,* 32 N. J. Eq. 103; *Tradesmen's Bldg., etc., Ass'n* v. *Thompson,* Id. 133; *Chiswell* v. *Morris,* 14 N. J. Eq. 101; *Hutchinson* v. *Swartsweller,* 31 N. J. Eq. 205; *Eggeman* v. *Harrow,* 37 Mich. 436; *Scriven* v. *Hursh,* 68 Mich. 176; *Sidener* v. *Hawes,* 37 Ohio St. 532; *Capehart* v. *Mhoon,* 5 Jones, Eq. 178; *Hines* v. *Potts,* 56 Miss. 346; *Young* v. *Morgan,* 89 Ill. 199; *Barnes* v. *Mott,* 64 N. Y. 397; *Muir* v. *Berkshire,* 52 Ind. 149; *Gibson* v. *McCormick,* 10 Gill & J. 65; *Geib* v. *Reynolds,* 35 Minn. 331; *Sidener* v. *Pavey,* 77 Ind. 241; *Lowrey* v. *Byers,* 80 Ind. 443; *McKenzie* v. *McKenzie,* 52 Vt. 271; *Walker* v. *King,* 45 Vt. 525; *Childs* v. *Stoddard,* 130 Mass. 110; *Gerdine* v. *Menage,* 41 Minn. 417; *Cobb* v. *Dyer,* 69 Me. 494; *Young* v. *Shaner,* 73 Iowa, 555; *Kaiser* v. *Lembeck,* 55 Iowa, 244; *Blodgett* v. *Hitt,* 29 Wis. 169; *Winslow* v. *Crowell,* 32 Wis. 639; *Kalscheuer* v. *Upton,* 6 Dak. 449; *Haggerty* v. *McCanna,* 25 N. J. Eq. 48; *Gans* v. *Thieme,* 93 N. Y. 225; *Wilton* v. *Mayberry,* 75 Wis. 191.

The right of subrogation is not founded on contract. It is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any con-

tractual relations between the parties. *Memphis & L. R. R. Co.* v. *Dow*, 120 U. S. 287; Bisp. Eq. § 338.

Relief by the way of subrogation in this class of cases always implies an intervening mortgage duly recorded, so as to have the force and effect provided by the recording act. In such case the question is not whether the subsequent mortgage is itself paramount, but whether the holder of it has an equitable lien paramount to the prior mortgage, in virtue of the fact that his money has been obtained through accident, fraud, or mistake, and has been used to pay prior liens.

Upon the facts found, the court below should have held as a matter of law that Cornwell was entitled to a paramount lien on the eighty acre tract for $516.90; on the one hundred and sixty acre tract for $841.90; and on both for $76.12,—with interest on each sum at the rate of seven per cent. per year from February 27, 1888, and not to such a lien on both tracts *en masse* for the aggregate of said sums and interest thereon as aforesaid. But plaintiff makes no point on this, and practically no harm will ensue.

COLLINS, J. When the loan of money was made by defendant Cornwell to defendant Marr, to secure which, as agreed upon, the latter mortgaged his entire farm, consisting of two hundred and forty acres, it was for the stipulated purpose of relieving one tract, (one hundred and sixty acres) from the trust deed held by Ormsby, the balance (eighty acres) from the Hayes mortgage, and the entire farm from delinquent taxes. The trust deed, the mortgage last referred to, and the taxes were represented to be, and in fact were, first liens upon the premises; and Cornwell believed—and it was implied from what Marr stated when applying for the loan—there were no other incumbrances, and that, with these paid off and discharged, his mortgage would take their place, and become the first and only charge upon the property. The taxes and the amounts due on the incumbrances, aggregating $1,434.82, were paid out of the proceeds of the loan, in accordance with the agreement under which it was made. Proper releases and discharges were procured and at once recorded, in the mistaken belief on the part of Cornwell, and

the agents who transacted the business, that there was no other or prior charge upon the premises. For some time thereafter they remained in ignorance of the fact that plaintiff's mortgage was in existence and of record when the one in question was executed, and by their acts had, of record, become the senior lien. As Marr was and is insolvent, and plaintiff's mortgage, with costs and disbursements of foreclosure, now exceeds in amount the value of the farm as found by the trial court, the seriousness of the situation is quite apparent. The court below subordinated the plaintiff's claim to that of defendant Cornwell, to the extent of the payments made for taxes, and to satisfy and extinguish the incumbrances, reinstating the liens, in effect; and its right and power so to do is the principal question now before us.

It has been well said that the doctrine of subrogation has been steadily growing and expanding in importance, and becoming more general in its application to various subjects and classes of persons. It is not founded upon contract, but is the creation of equity,—is enforced solely for accomplishing the ends of substantial justice; and, being administered upon equitable principles, it is only when an applicant has an equity to invoke, and where innocent persons will not be injured, that a court can interfere. It is a mode which equity adopts to compel the ultimate payment of a debt by one who in justice and good conscience ought to pay it, and is not dependent upon contract, privity, or strict suretyship. *Stevens* v. *Goodenough*, 26 Vt. 676; *Harnsberger* v. *Yancey*, 33 Grat. 527; *Smith* v. *Foran*, 43 Conn. 244. That in this way a court, under a great variety of circumstances, may relieve one who has acted under a justifiable or excusable mistake of fact, is readily conceded by appellant; but he invokes and seeks to have applied to respondent's case the general rule that the doctrine of subrogation will not be exercised 'in favor of a volunteer or a stranger who officiously intermeddles, such as a person who pays without any obligation so to do, or one who, without any interest to protect, liquidates the debt of another. There are a very respectable number of cases, several having been cited, in which relief has been refused under circumstances precisely like those now before us, where one who has loaned and used his money in

good faith, and for the express purpose of relieving a debtor from a pressing obligation, and his real property from a specific lien for the amount of the same, under a genuine but excusable misapprehension as to the rank and position of security taken by him on the same property, has been treated and characterized as a volunteer, a stranger, and an officious intermeddler, and denied the rights of an equitable assignee. But of late years, with the development of the principles on which the doctrine is founded, the courts have been taking a broader and more commendable view of the situation of such a party, and at this time very little is left of the views expressed in the earlier cases. The better opinion now is that one who loans his money upon real-estate security for the express purpose of taking up and discharging liens or incumbrances on the same property has thus paid the debt at the instance, request, and solicitation of the debtor, expecting and believing, in good faith, that his security will, of record, be substituted, in fact, in place of that which he discharges, is neither a volunteer, stranger, nor intermeddler, nor is the debt, lien, or incumbrance regarded as extinguished, if justice requires that it should be kept alive for the benefit of the person advancing the money, who thereby becomes the creditor.    Of the many authorities on this, we cite *Tradesmen's Building & Loan Ass'n* v. *Thompson*, 32 N. J. Eq. 133; *Gans* v. *Thieme*, 93 N. Y. 225; *Sidener* v. *Pavey*, 77 Ind. 241; *McKenzie* v. *McKenzie*, 52 Vt. 271; *Cobb* v. *Dyer*, 69 Me. 494; *Levy* v. *Martin*, 48 Wis. 198, (4 N. W. Rep. 35;) *Detroit Fire & Marine Ins. Co.* v. *Aspinall*, 48 Mich. 238, (12 N. W. Rep. 214;) *Crippen* v. *Chappel*, 35 Kan. 495, (11 Pac. Rep. 453;) 3 Pom. Eq. Jur. § 1212; Har. Subr. §§ 811, 816; Dixon, Subr. 165.

It is contended by appellant that Cornwell must, under the circumstances, be declared culpably negligent when taking his security and discharging of record the Ormsby and Hayes liens; and, further, that, as the plaintiff's mortgage was then of record, he had notice of it, in contemplation of law, and could not have been misled or mistaken.    Marr's application for a loan was for the avowed purpose of taking up and discharging the Ormsby and Hayes liens, and was well calculated to convey the impression that these were the only incumbrances.    He intentionally or otherwise concealed the truth, omitting

to state the existence of a junior incumbrance in a large amount, a knowledge of which would have ended at once all negotiations with Cornwell's agents. It was misleading, and the persons last named were not negligent because they, to some extent, relied upon and were misled by it. See *Newell* v. *Randall*, 32 Minn. 171, (19 N. W. Rep. 972.)

It is a common thing for courts of equity to relieve parties who have by mistake discharged mortgages upon the record, and to fully protect them from the consequences of their acts, when such relief will not result prejudicially to third or innocent persons. *Gerdine* v. *Menage*, 41 Minn. 417, (43 N. W. Rep. 91.) Paraphrasing slightly a remark made in the opinion therein, it may be said that, considering this case as it stands between the appellant and respondent Cornwell, it is obvious that it would be most unjust and inequitable not to place the parties *in statu quo* with respect to the amounts paid out upon liens which were superior to that held by plaintiff, now being foreclosed. It is true that at the outset the mistake grew out of an error in the abstract books kept by Cornwell's agents; but later, when examining the records in the office of the register of deeds, the error was unnoticed and the mistake undiscovered. It was a mistake of fact, and, in our judgment, not of such a character as to bar the respondents' claim to equitable relief. That, in a proper case of mistake of fact, such relief may be afforded notwithstanding the intervening mortgage was of record when the error was committed, is well settled. *Geib* v. *Reynolds*, 35 Minn. 331, (28 N. W. Rep. 923.) Cornwell misunderstood, and was justifiably ignorant of, the facts, and acted, through his agents, upon the assumption that he and they knew the true state of the title when the liens which his money had discharged were satisfied of record, and plaintiff's mortgage advanced to the position of the senior incumbrance, without a single act of his, and to the very great detriment of the person who had brought it about. The court was right in applying the principle of subrogation, or "equitable assignment," as it is frequently called.

Judgment was entered below, directing that the premises be sold, on foreclosure of plaintiff's mortgage, as one farm, and that, out of the net proceeds, there be first paid to respondent Cornwell the sums

of money which he paid out as taxes, and to take up and satisfy the incumbrances before mentioned. The appellant's counsel distinctly approves that part of the judgment which requires a sale of the premises as an entirety, but makes the point, in case we affirm the action of the trial court on the main question, that the farm should have been sold subject to the subrogator's lien for a specific sum on the 160 and for another specific sum on the 80 acre tract, and thus there would have been avoided the possibility, which he now suggests, of having shifted over upon one of these tracts, to some extent, a burden which ought to wholly rest upon the other.

It is evident from the record that the attention of the trial court was not called to this point, and hence the order that the sale be of the whole as one body of land. But we are unable to see how the result now suggested by counsel would have been avoided by the adoption of his plan without selling the tracts separately, keeping the funds derived from each distinct, and applying the same to the liquidation of the liens, so far as they might go. Counsel does not contend that the two tracts of land should have been sold separately, but, as before stated, indorses the judgment directing a sale *en masse.* He is concluded on this point by his position as to the manner of sale.

Judgment affirmed.

(Opinion published 52 N. W. Rep. 31.)