NORTHWESTERN GUARANTY LOAN COMPANY,
APPELLANT, *v.* SMITH ET AL., RESPONDENTS.

[Submitted October 11, 1893.  Decided November 8, 1894.]

MORTGAGES—*Guardian and ward.*—The absence of a statute authorizing a guardian to mortgage his ward's real estate does not render void a mortgage given by a guardian under an order of the district court by which no new debt is created, but merely an exchange of one creditor for another is effected and an advantageous extension of time and reduction of interest secured.

*Appeal from Fourth Judicial District, Missoula County.*

FORECLOSURE of mortgage.   Judgment was rendered for the defendants below by MOODY, J., on demurrer to the complaint.   Reversed.

Statement of the case by the justice delivering the opinion:
This is an action seeking to foreclose a mortgage given by the defendant Ida L. Smith, an infant, through her guardian, John P. Smith, her father.   A demurrer to the complaint was sustained, and plaintiff appeals from the judgment.

The following facts are stated in the complaint: John P. Smith gave, by deed of conveyance, to his infant daughter, a house and lot in the city of Missoula.   At the time of this

deed the real estate in question was encumbered by a mortgage of eight hundred dollars given by John P. Smith to the Missoula Loan & Building Association. Subsequently, and on February 2, 1890, the debt which this mortgage secured was past due, and the condition of the mortgage was broken. The guardian filed a petition in the district court setting forth these facts, and that the mortgagee demanded the debt and threatened to foreclose the mortgage and sell the property. The petition prayed for authority to borrow sufficient money to pay the mortgage, and for this purpose to mortgage the property of the ward. A day was set for the hearing of this application, and due notices were given. On the hearing the court took evidence as to the condition of the property, and entered a judgment, wherein the above facts were recited. It further appears in said judgment that the accounts of the guardian were settled, and that there was no money or personal property in his hands, and that the real estate in question was the only property of the ward, and that the rents from the same were not more than enough to maintain and educate her; that there was due on the Missoula Loan & Building Association mortgage eleven hundred and fifty-eight dollars and sixty-nine cents; that foreclosure was threatened, and that the market for real estate in Missoula was dull, and that if a foreclosure and sale took place the property would be sacrificed, and that the interest of the ward requires the property to be saved, and that this can be done by borrowing money to satisfy this mortgage. It was then adjudged that said John P. Smith, as guardian for said Ida L. Smith, is authorized to borrow, for the purpose of paying off this mortgage debt, the sum of eleven hundred and fifty-eight dollars and sixty-nine cents, for a period not exceeding three years, and at a rate of interest not exceeding one per cent per month, and that to enable him to do this he is authorized to mortgage the property of said ward. It is further adjudged that, before delivering any mortgage, he report his contract for the approval of the court.

In pursuance to, and under authority of, this judgment the guardian borrowed eleven hundred and fifty dollars from the plaintiff in this action, and gave the mortgage now sought to

be foreclosed, with which money he satisfied the mortgage of the Missoula Loan & Building Association. All these facts appear by the complaint in this action, with the exhibits attached thereto. The demurrer to the complaint was on the ground that the complaint did not set forth a cause of action, in that it appeared by that pleading that the mortgage to plaintiff was void. The same contention is now made upon this appeal.

*C. S. Marshall, John M. Evans, R. L. McCulloch,* and *A. K. Barbour,* for Appellant.

*George W. Reeves,* for Respondents.

DE WITT, J.—The question upon this appeal is whether the mortgage given by the guardian upon his ward's estate, under the authority of the judgment of the court, is void; that is to say, had the court no power or jurisdiction to render such a judgment? Mr. Pomeroy lays it down that " It seems to be a doctrine sustained by a preponderance of authority that a court of equity has no power, as a part of its jurisdiction over infants, to order a sale of the infant's real estate for purposes of maintenance, education, or investment." (3 Pomeroy's Equity Jurisprudence, § 1309, p. 332.) But in his note to this remark the author refers to cases which have held a contrary doctrine. (See, also, *Allman* v. *Taylor,* 101 Ill. 185; *Dodge* v. *Cole,* 97 Ill. 338; *Smith* v. *Sackett,* 5 Gilm. 534; *Goodman* v. *Winter,* 64 Ala. 410.) But the same author says, in the same section above quoted: " The powers and duties of guardians in their management of the property of infant wards, and the powers of courts to direct a sale of their lands, are so much regulated by statutes in the various states that these general rules of the purely equitable jurisdiction can have little practical application throughout the United States." We have in this state a statute which provides for the sale of the ward's estate, under certain circumstances. (Probate Practice Act, § 369.) But we have no statute which directly authorizes a guardian, under order of the court or otherwise, to mortgage the real estate of his ward.

The majority of the decisions seem to be to the effect, as Mr.

Pomeroy remarks, that the court has not jurisdiction, in the absence of a statute, to authorize a guardian to sell or mortgage the real estate of his ward. This doctrine seems to be a relic of the English doctrine of primogeniture, and was born of the desire to preserve for the infant the integrity of the *corpus* of the real estate. While there is no direct authority in our statute to mortgage the ward's real estate, still we have the declaration of the statute that the guardian must safely keep the property of his ward; that he must maintain the same, with its buildings and appurtenances, and deliver it to the ward, at the close of his guardianship, in as good condition as he received it. (Probate Practice Act, § 422.) Whether we should ever be prepared to hold that a court could empower a guardian to mortgage the real estate of his ward for the purpose of raising money for the ward, or for his support or maintenance, we think we need not now determine, for such exact question we do not think is here presented. In this case no money whatever came to the guardian or to the ward by virtue of this mortgage to plaintiff, and no encumbrance was placed upon the ward's property additional to that which was already there. In effect, the guardian, under the order of the court, simply exchanged creditors. He exchanged a pressing and importunate creditor for one who was willing to let the loan stand for three years more. It appears by the judgment of the court, in authorizing the loan and mortgage, that the ward's estate was about to be sacrificed by foreclosure, and wholly lost, and that it could probably be saved to the ward by negotiating with a new proposed creditor. Of course, it appears, in the light of subsequent events, that the estate has not been finally saved to the ward, but the case may be looked at from the point of view which the court occupied when it made the order allowing this present loan and mortgage. As far as appeared to the court this transaction was certainly not to the disadvantage of the ward, but was for her probable advantage. None of the reasons adduced against the policy of allowing the ward's estate to be mortgaged apply to the transaction before us. There was no encumbrancing the ward's estate, for it was already encumbered in the identical amount. It is said that it is not good policy to allow a mortgage upon

the estate of a ward, lest it may finally eat up the estate, and the ward, at majority, receive nothing.   But the encumbrance was already there, and the estate was to be eaten up at once by the foreclosure of the Missoula Loan & Building Association mortgage.   The new mortgage simply postponed this devourment—which, under the old mortgage, would have been at once—to a period three years later, with the probability, as appeared, of finally saving the estate, or a portion of it, and the certainty of saving the rents and profits for three years. Therefore, not an argument or reason against the policy of allowing a mortgage upon the ward's estate applies to the facts before us.   The guardian must safely keep the property of his ward, and deliver it to the ward, at the close of his guardianship, in as good condition as he received it.   (Probate Practice Act, § 422.)   If the guardian and the court, as his superior, had allowed the mortgage of the Missoula Loan & Building Association to be foreclosed the guardian could not have kept the estate at all, and he never could have delivered it to the ward in any condition.   He adopted a course, under the order of the court, which seemed to offer a prospect of his keeping the estate for his ward, without adding one dollar's worth of burden to the estate, more than it was already carrying.   As a matter of fact he lightened the burden, for he obtained the new loan at the rate of six per cent interest, whereas the old loan was accumulating against the estate of the ward at the rate of nine per cent interest.

It was said in *Smith* v. *Sackett*, 5 Gilm. 545, as follows: "The jurisdiction of the court of chancery to order the sale of the whole or a portion of the estate of an infant, or to order it to be encumbered by a mortgage, whenever the interest of the infant demands it, will not be denied, whether that interest be of a legal or an equitable nature.   Such is one of the objects of this suit, and it certainly seems that the case made by the bill shows a strong necessity for the exercise of that power.   As I have already shown, the infant has an equitable interest in this land, of considerable value, for the property is averred to be worth some three thousand dollars.   The interest of the infant manifestly requires that the lien or encumbrance upon the estate should be discharged."   So the interest of this

infant in this case manifestly required that the mortgage debt to the Missoula Loan & Building Association should be discharged, or, if this could not be done, carried to a later and perhaps more prosperous period; otherwise the infant would have, at that time, lost her estate. It was held in *Allman* v. *Taylor, supra*, that the court might order the sale of an infant's unproductive real estate in order to raise money to pay an encumbrance upon productive property, and save the latter to the infant.

We are of opinion that under the facts of this case the doctrine announced in many decisions, against mortgaging a ward's estate, is not here applicable. The court, as superior guardian of the infant, here had reason to believe that it saw an opportunity to save the infant's estate, not by creating a debt, or by borrowing money, but by simply transferring an already existing debt from one creditor to another. The court had reason to believe that this would be of advantage to the infant, and indeed it was some advantage, although the final result is that the infant loses her estate now, instead of three years before.

The judgment in this case is reversed, and the cause is remanded, with directions to overrule the demurrer.

*Reversed.*

PEMBERTON, C. J., and HARWOOD, J., concurred.