CLEVELAND IRON MINING COMPANY v. EASTERN RAILWAY
COMPANY OF MINNESOTA.

February 2, 1899.

Nos. 11,439—(242).

Shortage in Cargo of Wheat Delivered to Carrier—Weights by Minnesota Weighmaster—Mistake—Findings Sustained by Evidence.

At the request of defendant company, owning and managing a grain elevator at West Superior, in the state of Wisconsin, the Minnesota state railroad and warehouse commission has furnished and maintained at said elevator a corps of inspectors and weighmasters; and, by consent of all parties concerned, the business of inspecting and of weighing grain, in and out, has been conducted in accordance with the provisions of our laws (G. S. 1894, §§ 7645–7713, inclusive). *Held*, in an action brought by a carrier of grain upon the Lakes against defendant company to recover the value of a shortage in the weight of wheat loaded on its vessel out of said elevator, of nearly two per cent., that it is immaterial whether the

parties interested, when agreeing upon the weighmaster to weigh out the wheat, merely imported an umpire, whose decision could only be impeached on the ground of fraud or such gross mistake in weights as would imply bad faith or a failure to exercise honest judgment, or introduced into their voluntary contract for an umpire the provisions of our grain laws, and thus selected an umpire whose decision was impeachable only when it was demonstrated by clear, strong and satisfactory evidence that a substantial mistake had been made in weighing; for in either event the evidence produced at the trial was sufficient to sustain the findings of fact and conclusions of law.

### Same—Deficiency of Two Per Cent.

Where it is established upon the trial that there was a deficiency of almost two per cent. (1,502 bushels) in a shipment of wheat in one vessel, intended to be of 81,000 bushels, as a matter of law it must be *held* that the error was either fraudulent, or was so gross as to imply bad faith, or a failure on the part of the umpire weigher to exercise an honest judgment when weighing out.

### Negligence of Carrier not Considered.

*Held*, further, that the question of negligence of plaintiff carrier when receiving the wheat on board, which contributed to the error in weighing, is not before the court for review on the record.

Action in the district court for St. Louis county to recover the value of 1,502 bushels of wheat, the amount of an alleged shortage in a shipment from defendant's elevator. The case was tried before Moer, J., who ordered judgment in favor of plaintiff for $1,994.- 52. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*M. D. Grover*, for appellant.

The receipts were executed under the provisions of the Minnesota statute, and the parties accepting and purchasing them contracted that the wheat represented by the receipts should be weighed and inspected, on delivery out of the elevator, by inspectors and weighmasters appointed under that statute. The decision in Sawyer v. Cleveland Iron Min. Co., 16 C. C. A. 191, to the effect that plaintiff as carrier was liable to the consignor for the shortage, though the grain was not actually loaded on the vessel, should not be followed. A bill of lading is not conclusive on the carrier as to the amount of goods received, nor is the carrier estop-

ped by statements in the bill from showing that no goods were received. Nat. Bank of Commerce v. Chicago, B. & N. R. Co., 44 Minn. 224. The bills of lading provided: "All the deficiency in the cargo to be paid by the carrier * * * and deducted from the freight, and any excess in the cargo to be paid for to the carrier by the consignee." This provision should be construed to mean that the carrier has agreed that payment of freight charges shall be made only for cargo actually loaded, and that the consignee has agreed to pay at the agreed rate for any excess in amount over that named in the bill. Merrick v. About 19,514 Bushels of Wheat, 3 Fed. 340; Rhodes v. Newhall, 126 N. Y. 574. Sawyer & Co. had no lawful claim against plaintiff to make good the shortage, if any. Plaintiff paid Sawyer & Co. when it was under no legal obligation so to do, holds no assignment from them, and has not been subrogated to any right of Sawyer & Co. to make claim against defendant. The finding that there was a shortage is not sustained.

*Searle & Spencer,* for respondent.

In case part of the cargo was not delivered it was due to mutual mistake. Mutual mistake is mistake reciprocal and common to both parties, where each labored under the same misconception of facts. Botsford v. McLean, 45 Barb. 478. Where parties contract under such mistake, equity has power to relieve. Shafer v. Davis, 13 Ill. 395; Mays v. Dwight, 82 Pa. St. 462; Fleetwood v. Brown, 109 Ind. 567. Equity will grant relief when mistake may be inferred from the nature of the transaction. Geib v. Reynolds, 35 Minn. 331. See City of Duluth v. McDonnell, 61 Minn. 288; Cobb v. Cole, 51 Minn. 48; Lane v. Holmes, 55 Minn. 379. If there was no mistake, then defendant has 1,502 bushels of wheat that do not belong to it; and its refusal to deliver, or make good on demand, constitutes conversion. G. S. 1894, § 7648; 2 Addison, Torts, § 461; Adams v. Castle, 64 Minn. 505; St. Paul & S. C. R. Co. v. Gardner, 19 Minn. 99 (132). See G. S. 1894, § 7645; Weiland v. Krejnick, 63 Minn. 314; Bretz v. Diehl, 117 Pa. St. 589. Under the terms of the bill of lading the vessel becomes surety for the delivery of the full amount of grain expressed, and under the law is compelled to make good the deficiency. Sawyer v. Cleveland Iron Min. Co., 16 C. C. A. 191.

Plaintiff became subrogated to the rights of the shippers. A surety who becomes such at the request of the creditor, and without any request from the debtor, is entitled to subrogation if the debt is paid. 1 Brandt, Sur. § 260. Where an insurance company pays a loss it may sue the author of the loss without assignment from the insured. Swarthout v. Chicago, 49 Wis. 625. See Heisler v. C. Aultman & Co., 56 Minn. 454; Memphis & L. R. R. v. Dow, 120 U. S. 287; Travers v. Dorr, 60 Minn. 173; Emmert v. Thompson, 49 Minn. 386; Felton v. Bissel, 25 Minn. 15; Daniels v. Palmer, 41 Minn. 116, 121. The payment by plaintiff operated as an equitable assignment. Connecticut v. Erie, 73 N. Y. 399; Swarthout v. Chicago, supra; McArthur v. Martin, 23 Minn. 74; Emmert v. Thompson, supra.

The railroad and warehouse law of Minnesota has no application. Cooley, Const. Lim. (6th Ed.) 149. There was no contract accepting the weights of the weighmaster as conclusive. If the statute is applicable, the section making the acts and certificates of the weighmaster final and conclusive is unconstitutional. Cooley, Const. Lim. (6th Ed.) 452; Groesbeck v. Seeley, 13 Mich. 329; White v. Flynn, 23 Ind. 46; Abbott v. Lindenbower, 42 Mo. 162; McCready v. Sexton, 29 Iowa, 356; Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418. The state has assumed the operation of the elevators, but the duty of the officials is confined to inspection and weighing. The law does not give to the weighmaster or inspector or to any state official control over the receipt or delivery of grain. It was the duty of defendant and not the state to deliver the grain.

The cases of Meyer v. Peck, 28 N. Y. 590, and Abbe v. Eaton, 51 N. Y. 410, support the contention of appellant as to the construction of the provision contained in the bill of lading, but these cases have been overruled. As between carrier and consignee or shipper, a bill of lading containing this provision is conclusive as to the amount, and if the cargo is deficient the carrier must make it good. Sawyer v. Cleveland Iron Min. Co., supra; Merrick v. About 19,514 Bushels of Wheat, 3 Fed. 340; Rhodes v. Newhall, 126 N. Y. 574. The finding as to the shortage is sustained by the evidence.

COLLINS, J.

Action by plaintiff, carrier of grain on the Lakes, to recover of defendant company, owning and operating an elevator at West Superior, Wisconsin, the value of 1,502 bushels of wheat alleged to have been short in a cargo shipped by A. J. Sawyer & Co., grain merchants, and loaded into plaintiff's vessel out of said elevator. Plaintiff had issued bills of lading to the shipper for 81,000 bushels, delivered on board, in which was the usual clause,

"All the deficiency in the cargo to be paid by the carrier (except when grain is heated or heats in transit), and deducted from the freight, and any excess in the cargo to be paid for to the carrier by the consignee."

The shortage was discovered at the point of destination, Buffalo, New York, where the grain was unloaded, and after an action had been commenced against this plaintiff, in which a judgment in its favor was reversed (Sawyer v. Cleveland Iron Min. Co., 16 C. C. A. 191, 69 Fed. 211), it paid the amount found to be due, and, claiming to be subrogated to the shipper's rights, instituted this action.

1. At the shipper's request the carrier guarantied delivery of the grain in its bills of lading. There was a deficiency, and, to the extent of its value, the carrier had to respond to the consignee, who had also, through an assignment, succeeded to the rights of the shipper. By payment plaintiff became subrogated to these rights, as fixed in the bills of lading, and could enforce the same by action, and without any formal assignment. See Emmert v. Thompson, 49 Minn. 386, 52 N. W. 31; Vega S. S. Co. v. Consolidated El. Co., supra, page 308.

2. But it is urged by counsel for defendant that special circumstances and conditions have intervened here, were established on the trial, and have been found by the court, which, if they had been shown at the trial of the Sawyer case, would have prevented a recovery in that action, and which, as a consequence, stand in the way of a recovery here. This claim is based upon the fact that in the year 1886 the Minnesota railroad and warehouse commission resolved to furnish an inspector and weighmaster at and for this defendant's West Superior elevator, if so requested by defendant's

officers; that the commission was so requested; that it did furnish inspectors and weighmasters, and has ever since maintained, by consent of all parties concerned, a full and ample corps of inspectors and weighmasters; that the business at said elevator has ever since been conducted in accordance with the provisions of our law relating to and governing the weighing, inspection, grading, storage and transportation of grain (G. S. 1894, §§ 7645–7713, inclusive), and precisely as if said elevator had been located within the limits of this state, instead of across the Wisconsin line.

We shall assume, for the purposes of this case (although plaintiff's counsel questions it), that these facts were all conclusively established by the evidence and found by the court; and we shall also assume that with these facts in existence, known to all of the parties concerned in the storage and shipment of this grain, and acted upon by them when storing and shipping the same, a voluntary contract was entered into, whereby the Minnesota weighmaster was selected as an umpire, whose decision was to be final in the matter of weighing this shipper's grain in and out of defendant's elevator. Whether the parties interested (plaintiff, defendant and shipper), when selecting or agreeing upon the weighmaster, merely imported an umpire, or incorporated into their contract for an umpire the Minnesota grain laws, need not be decided; for if their agreement was simply as to an umpire, whose decision could only be impeached on the ground of fraud or such gross mistake in weights as would imply bad faith or a failure to exercise honest judgment, or was an agreement which included in its terms, and for the umpire's guidance and conduct, the provisions found in our grain laws, with his decision impeachable only when it could be demonstrated by clear, strong and satisfactory evidence that a substantial mistake had been made in the weighing, the evidence here was sufficient to support the findings and conclusions.

All of the grain put on board of the plaintiff's vessel, which was first-class in all respects, was carried to Buffalo. All of it was carefully removed, and, with extra care and caution, weighed on carefully tested and adjusted receiving scales, of Fairbank's make,—the same make being used in defendant's elevator,—and was run into bins apart from other wheat. The shortage was then discovered.

For greater certainty the Buffalo elevator shipping scales were then tested and adjusted, and the grain again weighed. The shortage was 1,502 bushels,—exactly what it had been when the grain was unloaded from the vessel. Of course, this fact clearly demonstrated that a substantial mistake was made in weighing the grain which actually went on board at West Superior, and this was sufficient to support a conclusion that the error was either fraudulent, or was so gross as to imply bad faith, or a failure on the part of the umpire to exercise an honest judgment when weighing out the shipment. In either case his decision could be impeached. A deficiency of 1,502 bushels in a cargo of 81,000 (almost two per cent. of the whole) cannot be accounted for as an honest mistake. It is altogether too substantial, and would mean a loss to some person, other than defendant, of nearly 40,000 bushels every time this elevator, with a storage capacity of two million bushels, was emptied. Allowance for variations in weights must be made, and the law will not notice trifling discrepancies in scales. In fact, it was shown at the trial that the expected normal variation is from 25 to 50 bushels in 100,000.

The court below found all of the facts, and also that the mistake as to the weight at defendant's elevator was mutual. As might be anticipated, the question of plaintiff's negligence when the cargo was weighed out was not passed upon; nor did defendant's counsel move that a finding be made on this, nor have they assigned error because of this omission, nor has it been referred to in their brief. As the evidence would have justified a finding that plaintiff carrier was free from negligence which contributed to the shortage, the question is not before us for review.

Order affirmed.