[No. 2180]

## A. P. LAFFRANCHINI, APPELLANT, v. EMILY CLARK (FORMERLY EMILY JAMES), AS GUARDIAN OF THE PERSON AND ESTATE OF MARY BERRYMAN JAMES (A MINOR), AND MARY BERRYMAN JAMES (A MINOR), RESPONDENTS.

[153 Pac. 250]

1. GUARDIAN AND WARD—CONVEYANCE BY GUARDIAN—AUTHORITY.

Where a guardian of an infant gave a mortgage upon the common property of the infant, and the guardian, in order to pay off a mortgage about to be foreclosed, such mortgage was not valid; there being at the time no statute conferring on the court the power to allow the guardian to execute such mortgage.

2. SUBROGATION—PERSONS ENTITLED—MORTGAGEES—VOLUNTEER AND "INTERMEDDLER."

Where a guardian executed a mortgage upon land owned by herself and her minor ward to obtain money to prevent foreclosure under another mortgage running to a third party, the mortgagee was subrogated to the rights of the original mortgagee, where his mortgage was invalid, and the fact that he had no previous interest in the property did not make him a volunteer or intermeddler, a volunteer and intermeddler being a person who thrusts himself into a situation on his own initiative, and not one who becomes a party to a transaction upon the urgent petition of a person who is vitally interested therein, and whose rights would otherwise be sacrificed.

3. LIMITATION OF ACTIONS—SUIT TO FORECLOSE MORTGAGE.

A mortgage being a mere incident to the debt secured, an action to foreclose the mortgage is barred at the expiration of six years from the maturity of the note secured under Comp. Laws, 3718, providing that actions upon contracts and obligations founded upon instruments in writing must be brought within six years.

4. LIMITATION OF ACTIONS—PART PAYMENT—RIGHTS OF SUBROGA-
TION.

Though the mortgage given by a guardian for herself and
on behalf of her minor ward was invalid for the reason that
the order of the probate court,. directing the execution of the
mortgage, was without statutory authority, the proceeds of
the mortgage having been applied to the satisfaction of a
valid existing mortgage, a payment of interest on the invalid
mortgage will be applied on the former mortgage for the pur-
pose of tolling the statute of limitations in favor of the right
of the second mortgagee to enforce the prior mortgage by way
of subrogation.

APPEAL from Second Judicial District Court, Washoe
County; *R. C. Stoddard*, Judge.

Action by A. P. Laffranchini against Emily Clark, as
guardian of Mary Berryman James, and another. Judg-
ment for defendants, and plaintiff appeals. **Reversed
and remanded.**

*H. W. Huskey*, for Appellant:

The guardian had the right, "for the best interest of the
ward," to mortgage the property. The powers indirectly
granted by the statute were necessary in the correct
management of the ward's estate, included the power to
mortgage the ward's property to preserve it, and the
amendment of 1911 resulted only in expressly stating the
inherent powers of the court resulting from the sections
of the statutes as they stood in 1908. (*Northwestern G.
L. Co.* v. *Smith*, 15 Mont. 101, 48 Am. St. 662; *Davidson*
v. *Wampler*, 29 Mont. 61, 74 Pac. 82; *Smith* v. *Sackett*, 10
Gillman's Rep. 534; *Schmitt* v. *Jensen*, 140 Pac. 518.)

If it is not effective as a mortgage, the claim will be
enforceable as an equitable lien. (*Klaustermeyer* v. *Cleve-
land Trust Co.*, 105 N. E. 278; 1 Jones on Mortgages, 6th
ed. sec. 163; *Howe* v. *Courtney*, 107 N. W. 206; *Richardson
& May* v. *Hamlet*, 33 Ark. 237; *Remington* v. *Higgins*, 54
Cal. 620; *Peers* v. *McLaughlin*, 26 Pac. 119.)

Where each owned an undivided one-half interest in a
single city lot, and an existing encumbrance endangered
the whole property, the court had the power to authorize
the guardian to mortgage the ward's interest jointly with

her own to secure money to save the property. (38 Cyc. 40; 23 Cyc. 494.)

Where money is advanced upon request of a guardian to preserve a ward's property by paying off an existing encumbrance, with the understanding that such loan shall be secured by a first mortgage, and the mortgage given is invalid, the mortagee will be subrogated to the rights of the former mortgagee. (37 Cyc. 363, 471; *Crippen* v. *Chappel*, 35 Kan. 495, 11 Pac. 453, 57 Am. Rep. 187; *Gans* v. *Thieme*, 93 N. Y. 232.)

The right to subrogation is not barred by the statute of limitations. (*Coyle* v. *Wilkins*, 57 Ala. 108; *Whittington* v. *Flint*, 43 Ark. 504; *Ringo* v. *Woodruff*, 43 Ark. 649.)

If the rights of third parties have not intervened, a delay short of the statutory period of limitations will not bar a right to be subrogated. (*Hughes* v. *Thomas*, 111 N. W. 474.)

A mistake of law is an erroneous conclusion as to the legal effect of known facts; and such a mistake, unconnected with a mistake of fact, and where there are no indications of fraud, imposition, or undue advantage in the transaction, will not be considered by a court of equity. (15 Am. & Eng. Ency. Law, p. 634; *Guy* v. *Du Uprey*, 16 Cal. 196; *Brown* v. *Rouse*, 125 Cal. 645, 58 Pac. 267.)

*James B. Jones*, for Respondents:

The guardian has no power to mortgage his ward's real estate, except by order of court, based upon a statute empowering the court to make such order. (21 Cyc. 84.)

At the time of the giving of the mortgage there was no statute authorizing the court to order its execution. The later amendment authorizes a mortgage only when it appears for the best interest of the ward. The amendment proves that no authority theretofore existed. (Stats. 1911, p. 71; Rev. Laws, 6165.)

The power generally to sell or dispose of the real and personal property of minors, whether conferred by a testator by will, or upon a court by public statute, confers

no power to mortgage. (*Trutch* v. *Bunnell*, 11 Or. 58, 50 Am. Rep. 457.)

Equity will not give a remedy in direct contravention of a positive law. (Bispham's Pr. of Eq., p. 57.) If there can be no mortgage in law, there can be none in equity. (*Capen* v. *Ganison*, 5 L. R. A. 838.) Equity follows the law in the sense that it is bound generally, at least, by positive restrictions and rules of policy; and if an instrument is void at law for want of power to execute it, or is forbidden by statute, equity will not enforce it. (16 Cyc. 137.)

By the Court, COLEMAN, J.:

This is an action to foreclose a mortgage. From a judgment for costs in favor of the defendants, following an order sustaining a demurrer to plaintiff's complaint, an appeal is taken to this court.

The complaint alleges that in May, 1907, William James executed his certain promissory note to one John Schmitt in the sum of $4,000, bearing interest at 8 per cent per annum, payable May 27, 1908, to secure which he executed to Schmitt a mortgage upon lot 4, block C, of Reno; that on January 10, 1908, said James conveyed, subject to said mortgage, the lot mentioned to his wife, who is now Emily Clark, one of the defendants, and his daughter, Mary Berryman James, each receiving an undivided one-half interest; that said William James died January 15, 1908; that on April 14, 1908, defendant Emily James, now Emily Clark, was appointed guardian of her codefendant, Mary Berryman James, thereafter qualified as such guardian, and ever since has been, and now is, such guardian; that when the said note fell due on May 27, 1908, the said John Schmitt, the owner thereof, demanded payment, and threatened that, if payment was not forthwith made he would foreclose his said mortgage; that the interest of said minor was in great danger of being lost unless said note was paid; that the said Emily James (now Emily Clark), the guardian of Mary Berryman James, petitioned the district court of Washoe County for authority to

borrow a sum not to exceed $6,000 with which to pay off said indebtedness and satisfy some other outstanding liens against the property; and that, notice having been given of the hearing upon said petition, the court entered an order authorizing the said guardian to secure a new loan in a sum not to exceed $6,000, to execute the joint note of herself individually and as guardian, and to secure the payment of the same by a like joint mortgage upon the property in question; that in pursuance of said order plaintiff loaned defendants the sum of $5,000, and took their note, dated June 13, 1908, payable one year after date, with interest at 12 per cent per annum, and that a mortgage to secure the same was executed by said Emily James (now Emily Clark), individually and as guardian of Mary Berryman James, upon the property; that on June 14, 1911, all of the interest then due on said note was paid, and by mutual agreement the rate of interest was reduced to 8 per cent per annum.

It is the contention of appellant: (1) That the mortgage to appellant is a valid instrument; and (2) that, if not valid as a mortgage, appellant should be subrogated to the rights of John Schmitt under the mortgage held by him, and which was paid off by the money advanced by appellant.

**1.** As to the first contention, we are clearly of the opinion that it cannot be sustained. At the time the court ordered the guardian to borrow money and to secure the payment thereof on the part of the ward by giving a mortgage, there was no statute, as there is now (Stats. 1911, p. 71; Rev. Laws, 6165) authorizing the court to empower the guardian to execute a mortgage. The general rule covering this situation is stated by Cyc. as follows:

"The guardian has no power to mortgage his ward's real estate unless authorized by order of court in pursuance of a statute empowering the court to make such order." (21 Cyc. 84.)

See, also, 15 Am. & Eng. Ency. Law (2d ed.) 69; Woerner, Amer. Law of Guardianship, p. 177.

Appellant cites *Northwestern G. L. Co.* v. *Smith,* 15
Mont. 101, 38 Pac. 224, 48 Am. St. Rep. 662, in support
of the contention that the mortgage is valid.   Suffice it
to say that if we approved of the ruling in that case (as
to which we express no opinion), the facts of this case
are not the same as in that one;  consequently it is no
authority to support the contention here.

**2.**  Should the appellant be subrogated to the rights of
John Schmitt?  By the demurrer it is admitted that the
money advanced by appellant paid off the indebtedness
of Schmitt.   This money was advanced at the request of
respondent Emily Clark, both in her individual and in
her representative capacity.   While the mortgage is
void what is there to prevent the subrogation of appel-
lant to the rights of John Schmitt, who was paid with
appellant's money?  It is urged on the part of respon-
dents that appellant was a mere volunteer, a stranger
and an intermeddler, and therefore that he should not
be substituted.   We concede that a volunteer and inter-
meddler has no rights.   The question then is, Was appel-
lant a volunteer, a stranger, and an intermeddler?   It
was said by the Supreme Court of Utah, in *George* v.
*Butler,* 16 Utah, 111, 50 Pac. 1032, that:

"Tested alone by the earlier cases, Sutherland might
be regarded as a volunteer, but latterly the doctrine of
subrogation has been developed and expanded, and given
a wider application to business matters.   By analogy, it
has been applied to transactions similar to the one under
consideration, to one having no previous interest to pro-
tect, who pays off a mortgage, or advances money for its
payment, at the instance of the mortgagor, and for his
benefit, when no innocent person can be injured, believ-
ing he is getting security equal to that of the person
whose debt he pays.   We cannot hold Sutherland to be
a mere volunteer or stranger, officiously intermeddling
by paying the debts due the Pacific Investment Company.
(*Emmert* v. *Thompson,* 49 Minn. 386, 52 N. W. 31, 32 Am.
St. Rep. 566; 3 Pom. Eq. Jur., sec. 1212; *Cobb* v. *Dyer,*
69 Me. 494; *Bruse* v. *Nelson,* 35 Iowa, 157; *Whitesalle* v.

*Loan Agency*, 27 S. W. 309; Harris, Subr. sec. 811.) Our conclusion is that the decree of the court below, subrogating the cross complainant to the lien of the Pacific Investment Company by virtue of the assignment and delivery of the lease as a pledge to secure the $2,500 loaned on November 1, 1890, and directing it to be paid before the debt to plaintiff, was not erroneous. The decree of the court below is affirmed."

In the case of *Gans* v. *Thieme*, 93 N. Y. 232, the court uses the following language:

"It is no doubt true, however, as the learned counsel for the respondents argues, that a volunteer cannot acquire either an equitable lien or the right to subrogation, * * * but no one who, at the request of another, advances his money to redeem, or even to pay off a security in which that other has an interest, or to the discharge of which he is bound, is not of that character, and, in the absence of an express agreement, one would be implied, if necessary, that it shall subsist for his use, and it will be so enforced. But the doctrine of substitution may be applied although there is no contract, express or implied. It is said to rest 'on the basis of mere equity and benevolence,' * * * and is resorted to for the purpose of doing justice between parties. Here the defendants have no equity."

Mr. Pomeroy, in considering the question of subrogation, says:

"The doctrine is also justly extended, by analogy, to one who, having no previous interest and being under no obligation, pays off the mortgage, or advances money for its payment, at the instance of a debtor party and for his benefit; such a person is in no sense a mere stranger and volunteer." (3 Pom. Eq. Jur., sec. 1212.)

"One who at the instance of the debtor advances money to be used by the debtor in the payment of a prior security, is not a stranger or intermeddler in his affairs." (*Union M. B. & T. Co.* v. *Peters*, 72 Miss. 1058, 18 South. 497, 30 L. R. A. 829, citing authorities.)

In *Zimmerman* v. *Haller*, 154 N. Y. Supp. 674, the court uses the following language:

"Subrogation is, in point of fact, simply a means by which equity works out justice between man and man. Judge Peckham says, in *Pease* v. *Egan*, 131 N. Y. 262, 30 N. E. 102, that 'it is a remedy which equity seizes upon in order to accomplish what is just and fair as between the parties'; and the courts incline rather to extend than to restrict the principle, and the doctrine has been steadily growing and expanding in importance."

Therefore, whatever may have been the old test of what constituted a volunteer, stranger, and intermeddler, we believe that the decided trend of modern authorities is to take a liberal view of the question; and, being guided by this modern view, we are of the opinion that a volunteer, a stranger, an intermeddler, is one who thrusts himself into a situation on his own initiative, and not one who becomes a party to a transaction upon the urgent petition of a person who is vitally interested, and whose rights would be sacrificed did he not respond to the importunate appeal.  If this conception is in keeping with what we believe to be the modern and better view, it is clear that appellant was no stranger, volunteer, or intermeddler.  If he was not, why should he suffer?

It was said in *Stevens* v. *King*, 84 Me. 293, 24 Atl. 851:

"Legal subrogation takes effect to its full extent for the benefit of one who, being himself a creditor, pays the claim of another who has a preference over him by reason of his liens and securities. (Bouv. Law Dic. Subrogation.) It applies to a great variety of cases, and is broad enough to include every instance in which one party pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter; not, however, in the interest of mere volunteers and intermeddlers; nor is it allowed so as to do injury to the rights of others.  It ignores the form and looks to the substance.  It construes payment to be purchase and purchase to be payment, as justice may demand.  It substitutes one person for another, or property for property. Sheldon on Subrogation, sec. 247, lays down as deducible from the cases on the subject the following rule: 'And a party who has paid a debt at the request of a debtor,

and under circumstances which would operate a fraud upon him if the debtor were afterwards allowed to insist that the security for the debt was discharged by his payment, may also be subrogated to the security, as to that debtor.' "

Would not a fraud in fact be perpetrated upon appellant if he were not permitted to be subrogated to the Schmitt mortgage? The Schmitt mortgage was given by the father of the minor; she took the property subject to the debt. Would it not be an approval of the grossest injustice for a court of equity to permit this minor to have the property relieved of the burden attached to it, at the expense of one who aided her, as did appellant?

The reasons which have induced the courts to deny the right of a guardian to mortgage an infant's property do not exist here. The courts, in denying this privilege (when not allowed by statute), proceed upon the theory that mortgages, as a rule, eat up the estate. In this case the process of devouring was about to be set in motion when request was made to appellant to save the estate from an existing mortgage; one more effort, and the estate would have been "swallowed up." Appellant stepped into the breach; he stayed the pending and final gulp; he preserved the *status quo*, and at a time, too, when the entire country was at the tail end of a devastating financial cataclysm; in fact, he was a "good Samaritan." What shall he receive for his pains? Gratitude or ingratitude? justice or injustice? equity or inequity? The spirit of common decency, to say nothing of equity, prompts a court to hold that this man should not be turned away without relief. In our opinion, appellant should be subrogated to the rights of John Schmitt. And in this opinion we do not stand alone. Other courts have passed upon similar transactions.

"The right of subrogation, or of equitable assignment, is not founded upon contract alone, nor upon the absence of contract, but is founded upon the facts and circumstances of the particular case, and upon principles of natural justice; and generally, where it is equitable that

a person furnishing money to pay a debt should be substituted for the creditor, or in place of the creditor, such person will be so substituted." (*Crippen* v. *Chappel,* 35 Kan. 495, 11 Pac. 455, 57 Am. Rep. 187.)

See, also, 37 Cyc. 363, 364, 365; *Northwestern Mut. S. & L. Assn.* v. *White* (N. D.) 153 N.W. 975; *Hays* v. *Ward,* 4 Johns. Ch. (N. Y.) 123, 8 Am. Dec. 554; *Wall* v. *Mason,* 102 Mass. 313.

The case of *Crippen* v. *Chappel, supra,* is, in legal effect, identical to the one at bar. In that case money was advanced to pay off a prior mortgage upon the assurance that the administrator would obtain an order of court authorizing him to execute a mortgage to secure the money thus advanced. The order of court was obtained, the money advanced, and the mortgage executed pursuant to the order of court. The mortgage given by the administrator was void for the reason that the court had no authority to empower the giving of it. It was held in that case that the parties loaning the money, under those circumstances, to pay off the first mortgage, would be subrogated to the rights of the holder of the mortgage paid off. We believe the holding of the court was founded upon principles of equity and natural justice, and for the court not to have so held would have enabled the other parties to perpetrate a fraud upon the one who came to their rescue.

In the case of *Wilson* v. *Hubbard,* 39 Wash. 671, 82 Pac. 154, it appears that Virginia Wilson, after executing a mortgage upon certain real estate, died, leaving minor children. The mortgage was foreclosed. For the purpose of raising money to redeem from the foreclosure sale, an order of court was made, authorizing the execution of a mortgage upon the property. In proceedings to foreclose the last-mentioned mortgage, the court held the mortgage to be void, but ruled that the mortgagee should be subrogated to the rights of the mortgagee. whose debt had been paid off with the money realized under the void mortgage. The court said:

"One who in good faith lends money which is actually

used to pay debts of an estate, * * * and in pursuance
of said agreement takes a mortgage for his security,
which proves invalid, will be subrogated to the benefit
of the liens held by the creditors of said estate who were
paid with his money"—citing authorities.

We think that the reasoning of the Supreme Court of
Montana, in the case of *Northwestern G. L. Co.* v. *Smith,
supra,* is in support of our position in this case.   At page
462, 37 Cyc., it is said:

"Where an invalid or defective mortgage is given to
secure an advance of money made for the express pur-
pose of paying off a prior incumbrance, the mortgagee in
the defective mortgage will be subrogated to the lien of
the incumbrances so discharged, in the absence of inter-
vening incumbrances."

See, also, *Northwestern Mut. S. & L. Assn.* v. *White*
(N. D.) 153 N. W. 975.

In the case of *Heuser* v. *Sharman,* 89 Iowa, 355, 56 N.W.
525, 48 Am. St. Rep. 330, it is said:

"It has been held that the right of subrogation is not
founded on contract, but is the creation of equity, and
enforced solely for the protection of persons who, by
paying the debts of others, should in good conscience be
substituted in the place of the original creditor.   But now
it is held by many of the courts that where a third person
pays the debt at the instance of the debtor, and upon an
agreement or understanding with the debtor that he shall
be entitled to the benefit of the security held by the
creditor, equity will compel the debtor to do justly, and
will substitute the person who discharges the debt to all
the rights of the creditor whose claim the third person
has discharged.   (*Crippen* v. *Chappel,* 35 Kan. 495, 11 Pac.
453, 57 Am. Rep. 187; *Insurance Co.* v. *Aspinwall,* 48 Mich.
238, 12 N.W. 214; *Levy* v. *Martin,* 48 Wis. 198, 4 N.W. 35;
*Cobb* v. *Dyer,* 69 Me. 494; *McKenzie* v. *McKenzie,* 52 Vt.
271; *Emmert* v. *Thompson,* 49 Minn. 386, 52 N.W. 31, 32
Am. St. Rep. 566; *Baker* v. *Baker,* 2 S. D. 261, 49 N.W.
1064, 39 Am. St. Rep. 776.)   Without reviewing these
authorities, it is sufficient to say that they fully sustain

the rule above announced. In some of them there does not appear to be even an express contract that the substitution shall be made, but the right was enforced because of a mere understanding or expectation of the transfer of the security; in others the contract was that the mortgage should be paid, and a new one substituted for it; and in others, where new mortgages were made which were held to be invalid, it was held that the person making the payment was entitled to be subrogated to all the rights of the original mortgagee. This principle commends itself to us as eminently just."

In the case of *Haverford L. & B. Assn.* v. *Fire Assn.*, 180 Pa. 522, 37 Atl. 179, 57 Am. St. Rep. 657, it is said:

"Thomas Dougherty, supposing that under the will of Frances Dougherty he was the owner of the entire premises, mortgaged them to the appellant for $2,200, and the appellant, also supposing him to be the owner, loaned him the money, but at his request applied part of it to the payment of a prior mortgage to the Fire Association, one of defendants. It is now conceded that, by the true construction of the will of Frances Dougherty, Thomas was not the owner of the whole, but only of an undivided fifth as tenant in common with his four children. Under these circumstances it is entirely clear that Dougherty, having relieved the common estate of an incumbrance, was entitled to contribution from his cotenants, and might have enforced his claim by subrogation to the rights of the mortgagee under the discharged mortgage.   *   *   *   In the present case the appellant was not a volunteer, but paid the first mortgage on the express direction of the debtor, and with the intention of both parties that the appellant should be secured by the land. 'A person who has lent money to a debtor for the purpose of discharging a debt may be subrogated by the debtor to the creditor's rights, and if the party who has agreed to advance the money for the purpose employs it himself in paying the debt and discharging the incumbrance on land given for its security, he is not to be regarded as a volunteer. He is not, after

such an agreement with the debtor, a stranger in relation
to the debt, but may, in equity, be entitled to the benefit
of the security which he has satisfied with the expecta-
tion of receiving a new mortgage or lien upon the land
for the money paid.' (Dix. Subr. 165.)"

See, also, *Lashua* v. *Myhre*, 117 Wis. 18, 93 N. W. 811;
*Scott et al.* v. *Land Mort. I. & A. Co.*, 127 Ala. 161, 28
South. 709; *Whitewell* v. *Texas* (Tex. Civ. App.) 27 S. W.
309; *Baker* v. *Baker*, 2 S. D. 261, 49 N. W. 1064, 39 Am.
St. Rep. 776; *Sproal* v. *Larsen*, 138 Mich. 142, 101 N. W.
213; *Western Mort. & I. Co.* v. *Ganzer*, 63 Fed. 647, 11
C. C. A. 371; *Amick* v. *Woodworth*, 58 Ohio St. 86, 50
N. E. 437; *Warford* v. *Hankins*, 150 Ind. 489, 50 N. E. 468;
*Bank* v. *Brock*, 13 S. D. 409, 83 N. W. 436; *Reimler* v.
*Pfingsten* (Md.) 28 Atl. 24; *Gore* v. *Brian* (N. J. Ch.) 35
Atl. 897; *Fievel* v. *Zuber*, 87 Tex. 275, 3 S. W. 273; *Mitchell*
v. *Butt*, 45 Ga. 162; *Emmert* v. *Thompson*, 49 Minn. 386,
52 N. W. 31, 32 Am. St. Rep. 566; *Boevink* v. *Christiaanse*,
69 Neb. 256, 95 N. W. 652.

**3, 4.** But it is urged by the respondents that, even if
appellant is subrogated to the rights of Schmitt, the right
of foreclosure is barred by the statute of limitations.
The note held by Schmitt fell due May 27, 1908. The
debt is the principal thing, and the mortgage but a mere
incident. (27 Cyc. 1286; *Local I. Co.* v. *Humes*, 151 Pac.
878.) By section 3718, Cutting's Comp. Laws (section
4967, Revised Laws of Nevada), actions upon contracts
and obligations founded upon instruments in writing must
be brought within six years. So that, if there were no
payment or new promise, action on the Schmitt note would
have been barred after May 27, 1914. The present suit
was not commenced until after that date. But holding,
as we do, that appellant should be subrogated to the
rights of Schmitt, he stepped into the shoes of Schmitt,
so to speak, as of the date of the payment of the Schmitt
note, which was on or about June 12, 1908. While on
June 14, 1911, there was paid to appellant in behalf of
respondents the accrued interest on the mortgage exe-
cuted pursuant to the order of the court, we think, in

view of the circumstances, that that payment should be credited first to the payment of the accrued interest on the Schmitt note, at the rate of interest it was drawing, and that the excess, if any, should be credited upon the principal of that note. That being done, it will be seen that suit upon the Schmitt note is not barred by the statute, even as of this date. (*Bassett* v. *Mining Co.*, 15 Nev. 293; 25 Cyc. 1034, 1035.)

It is ordered that the judgment of the district court be reversed, and that the case be remanded for further proceedings in accordance with the views herein expressed.