[Aderholt v. Embry.]

# Aderholt *v.* Embry.

*Action on Common Money Counts.*

1. *Application of payment.*—When a tenant, being indebted to his landlord for rent and advances, delivers cotton in general payment, not directing the application of the proceeds, he loses the right to make a subsequent application, and the landlord may appropriate the proceeds to either portion of the debt.

2. *When title passes by delivery.*—On a contract for the sale of chattels, when there is an agreement that they shall be counted, weighed, measured, or separated from a larger bulk, before dominion over them is turned over to the purchaser, the sale is not complete, and the title does not pass, until the count, weighing, measurement, or separation takes place; but a sale may be complete without these formalities, and even without an agreement as to the price, when such is the understanding or agreement of the parties, and it is consummated by delivery.

APPEAL from the Circuit Court of St. Clair.

Tried before the Hon. LEROY F. BOX.

This action was brought by James Embry, against David A. Aderholt, to recover the proceeds of sale of four bales of cotton, which the defendant had bought from one Frank Ward, and which the plaintiff claimed as the landlord of said Ward; and was commenced on the 11th February, 1884. The complaint contained only the common money counts, and the only plea was the general issue, "in short by consent, with leave to give in evidence any matter that might be specially pleaded."

On the trial, as appears from the bill of exceptions, plaintiff thus testified as a witness for himself: "Plaintiff rented a farm in said county, for the year 1883, to one Frank Ward, who was to pay him, as rent, six bales of cotton, each weighing 500 lbs.; and he also advanced to said Ward corn, fodder and provisions, to the amount of $161.70, and took his note for $218.47, in which was included a debt of about $57 paid by him for said Ward. In the fall of the year 1883, after Ward had removed a part of the cotton to Watson's gin, plaintiff notified him not to remove any more of the crop until his rent and advances were paid. Under the contract, the rents were to be delivered on the rented premises. Afterwards, about the last of November, or first of December, plaintiff went to see Ward, having been informed by his wife that Ward wanted to see him about the cotton, when Ward said yes—that he wanted something done with the cotton; that the cotton-house was full, and he wanted room; that he wanted to pay the rent, but

[Aderholt v. Embry.]

was not able to buy the bagging and ties. Plaintiff told him to carry the cotton to Coleman's gin, and he would accept a delivery there; that the cotton would be as convenient to him there as on the premises, and that he would furnish the bagging and ties. Ward agreed to deliver the cotton that was in the house and in the fence-corners, at Coleman's gin, and plaintiff agreed to furnish the bagging and ties for it. Afterwards, Ward hauled the cotton to Coleman's gin, and plaintiff furnished and delivered the bagging and ties. Ward said there was about six bales of the cotton, but plaintiff told him that, in his opinion, there was not more than five. Plaintiff and his wife were married in 1842, and have been living together ever since. His wife acquired the land on which the cotton was grown in 1874, from the estate of her father, who died in St. Clair county in the year 1873. At the time plaintiff told Ward to carry the cotton to Coleman's gin, neither he nor Ward knew how much cotton there was in the house and fence-corners; it had not been weighed or measured, and no price had been agreed on between them. He never saw Ward afterwards, or talked with him about the cotton or the sale thereof. After the cotton was baled, and while it was at the gin, Coleman pointed out five bales to him, and said, " *There is your cotton;* " but Ward was not present at the time. Plaintiff testified also, on cross-examination, that the land on which the cotton was grown belonged to his wife; and the note for the rent, which was produced, was payable to her; and plaintiff stated, in answer to questions, that it belonged to her. Thereupon, defendant moved the court to exclude from the jury all that plaintiff had testified about the cotton being his property, and that Ward was indebted to him on account of said rents; which motion the court overruled, and the defendant excepted."

" Plaintiff stated, also, that he got only one of the five bales of cotton ginned at Coleman's, one of the three bales ginned at Watson's, and three ginned at Knox', making in all five bales received on said contract for rent, and for advances, and for picking and saving cotton; that the bale ginned at Coleman's was worth eight cents per pound, and the others not more than six cents; and that he had never credited the amount received, or any other amount, on said note, though he had credited the amount on a statement of his account in a book. One Knox testified, that while he was at Coleman's gin, soon after Christmas, Ward pointed out five bales of cotton, and said, '*There is some cotton I have let Embry have, and if he comes over here, tell him to take it and credit it on the rent note;*" but, before witness saw Embry, Ward had removed the cotton. One Morris, who was the watchman at

Coleman's gin, testified that, after dark, on the evening of
January 11th, 1884, Ward came to the gin with a wagon, and
carried off the five bales of cotton; and that Coleman, when
informed of the fact by witness, said that Ward had brought
it there, and that he had a right to take it away. Coleman
testified, that when plaintiff told him not to let any one remove
the cotton, he replied, that Ward had brought it there, and he
had no way to prevent him from taking it away; that Ward
afterwards told him not to let the cotton be removed, but to
let plaintiff have it, if he would surrender up the rent note;
that after this, before he saw plaintiff, Ward had removed the
four bales." There was other evidence, showing defendant's
purchase of the cotton from Ward, and his subsequent sale of
it for $161; and defendant himself testified, that he had no
notice of plaintiff's claim to the cotton when he bought it.

The defendant asked the following charges to the jury:
(1.) " If the cotton was at the time, a part in the house, and
a part in the fence corners, and it was not weighed nor meas-
ured, nor the quantity otherwise ascertained; and if Ward
told him he wanted something done with the cotton, and
plaintiff told him to take it to Coleman's gin; and if nothing
more was said, and no price was agreed on between the
parties; that would not amount to a sale of the cotton by
Ward to plaintiff, and plaintiff would not be entitled to
recover." (2.) "Ward had the right, if he owed two debts,
to have payments made applied to either debt; and if the
jury find that he ordered the payment applied to rent, plaintiff
would not have the right to apply it to any other debt." (3.) "If
the rent contract was evidenced by a promissory note payable
to plaintiff's wife, and plaintiff has failed to show, to the rea-
sonable satisfaction of the jury, that the rents belonged to
him; if the jury find that the cotton was turned over to pay
rents, then plaintiff can not recover in this action." (4.) "If
the jury believe the evidence, they must find for the defend-
ant." The court refused each of these charges, and the de-
fendant excepted to their refusal.

The admission of the evidence objected to, and the refusal
of the several charges asked, are now assigned as error.

D. T. CASTLEBERRY, for appellant.

J. W. INZER, contra.

STONE, C. J.—The testimony tends to show that Ward,
the tenant, was indebted to James Embry one hundred and
sixty dollars, for advances to enable him to make his crop,
and in a further sum of fifty-seven dollars, for so much money

[Adcrholt v. Embry.]

paid by said Embry for him, Ward; total amount two hundred and eighteen dollars. There is no testimony that Mrs. Embry had any interest in this part of the claim. This is more than the alleged value of the four bales of cotton, and more than the plaintiff recovered in this suit. When Embry notified Ward not to remove the cotton off the premises, the claim set up was alike for rent and advances. The direction was, not to remove the cotton until these claims were paid. And so, when the interview was had in reference to the exposed condition of the cotton, ending in an understanding that Ward would haul the cotton to Coleman's gin, and Embry would furnish bagging and ties for packing it, we are not informed of any word that was then said, as to the particular liability it should be applied to. If, when the cotton was hauled by Ward to the gin, it was thereby delivered to Embry in part payment of his claims, this record fails to inform us that, up to that time, Ward had given any direction as to the application of the proceeds. And if that act was a surrender of the cotton to Embry's control, then Ward had let all opportunity pass to direct the application of the proceeds. Embry could then apply it to whichever debt he chose. On this hypothesis, Ward's abortive attempt, on two occasions afterwards, to communicate to Embry his wish that the proceeds be applied to the rent, would have accomplished nothing, even if Ward had not, before his messages reached Embry, put it out of the latter's power to apply, or even to realize the proceeds of the said four bales of cotton.

There is a rule, that if, in the negotiation for the sale of chattels, there is an agreement that they shall be counted, weighed, measured, or separated from a larger bulk, before dominion over them is turned over to the purchaser, then the sale is not complete, and the title does not pass, until the count, weighing, measurement, or separation takes place. *Mobile Savings Bank v. Fry*, 69 Ala. 348. But a sale may be complete without these formalities, when such is the understanding and agreement of the parties. Dominion is frequently surrendered, and number, weight, measurement, price even, left for after determination. The doctrine of *quantum meruit* and *quantum valebat* comes to the relief of many contracts, otherwise imperfectly expressed.—*Shealy v. Edwards*, 73 Ala. 175. We think there was sufficient testimony to justify the submission to the jury of the inquiry, whether or not, by the agreement to deliver, and the actual delivery of the cotton by Ward at Coleman's gin, accompanied by the other circumstances in evidence, he did not surrender, and intend to surrender dominion over the cotton to Embry as purchaser. There was, therefore, no error in refusing to

[Lockard v. Barton.]

exclude from the jury all the witness Embry had testified about the cotton being his property.*

What we have said above shows the Circuit Court did not err in the refusal of the several charges asked. Referring specially to the third of the charges, its vice is that it entirely ignores the testimony tending to prove the debt for advances, due to Embry himself.

Affirmed.