# McCurdy *v.* Middleton.

*Bill in Equity to enforce Vendor's Lien on Land.*

1. *Application of partial payments.*—When a debtor owes two or more separate debts to one creditor, and makes a partial payment, he may direct to which debt it shall be applied; but this right must be asserted at the time the payment is made, and, if not then. asserted, the right of election devolves on the creditor, as between debts past due; and if no application is made by either party at the time the payment is made or received, the law applies it in the manner most beneficial to the creditor—that is, to the most precarious debt, or the one least secured; but it will not be applied to a debt not yet due, when there is an unsatisfied debt past due.

2. *Payment; cross demand* —A cross demand can not operate or be treated as a payment, in the absence of an agreement between the parties to that effect.

3. *Burden of proof as to payment.*—Under a bill to enforce a vendor's lien on land, where the purchase-money was payable by installments, and the legal title was retained by the vendor, the *onus* is on the purchaser to prove full payment.

4. *Vendor's lien; extent of interest subject to.*—Where a widow, having a life-estate in lands as dowress, purchases the reversionary fee, but fails to pay the purchase-money, only the reversionary interest so purchased is subject to sale under a decree enforcing the vendor's lien.


APPEAL from the Chancery Court of Lowndes.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 30th March, 1885, by W. D. McCurdy and T. L. Farris, as administrators of the insolvent estate of Robert F. Simonton, deceased, against Mrs. Roxana Simonton, the widow and sole devisee of said Robert F., and against Mrs. Amanda W. Middleton (*nee* Simonton) and her husband; and sought to enforce against Mrs. Middleton a vendor's lien on a tract of land, for a balance of the purchase-money alleged to be due and unpaid. The tract of land contained 640 acres, and embraced parts of sections 13, 14, 23, and 24, township 13, range 15, in Lowndes county; and it was part of a larger tract, which contained in all 1560 acres, and of which W. D. Simonton died seized and possessed during the year 1862. Mrs. Amanda W. Simonton (now Middleton) was the widow of said W. D. Simonton; and the 640 acres of land was allotted to her as her dower in his lands. In November,

1868, the whole of said plantation was sold by John A. Tyson, as administrator of said W. D. Simonton's estate, under an order of the Probate Court, including the reversionary interest in the 640 acres of the dower lands ; Mrs. Amanda W., the widow, becoming the purchaser of the entire tract, at the price of $3.75 per acre, but afterwards transferring her right as purchaser to said Robert F. Simonton, by agreement between them ; and a conveyance was executed to him as the purchaser, under an order of the court, which recited that he had been substituted as purchaser by consent of the widow, and that he had paid the purchase-money in full; the order of court being dated 20th April, 1871.

The agreement between Mrs. Amanda W. and Robert F. Simonton, as reduced to writing, and dated January 27th, 1869, after reciting the sale by Tyson as administrator, and the purchase by Mrs. Simonton, one-third of the purchase-money payable in cash, and the residue in one and two years, proceeds thus : "The party of the second part [R. F. Simonton] has paid to said administrator the first (or cash) payment, and agrees to pay the notes given by the party of the first part [Mrs. A. W. Simonton] to said administrator, when due ; and the party of the first part agrees to transfer to the party of the second part all the land belonging to said estate, except 640 acres known as the dower land, and to pay said R. F. Simonton $3.75 per acre for said 640 acres of land, with interest from day of sale, to-wit, $2,400 ; payment to be made as required by the administrator. But, if the said party of the first part shall fail to pay as above, then she is to transfer her bid on said lands to the party of the second part, provided he pays the two notes now held against her by said Tyson as administrator. But, in case of failure to pay said $2,400 to the party of the second part, her right of dower is in no event to be affected ; in other words, the said A. W. Simonton is to have the fee-simple title to her dower, by paying said R. F. Simonton the above price ; and said R. F. Simonton is to have the fee-simple title to the balance of the lands." This is the contract under which the complainants assert a vendor's lien, alleging that the last installment of the purchase-money ($800) had never been paid. A receipt was given by R. F. Simonton for the first and second payments, which was dated November 13th, 1869, and in these words : " Received of Mrs. A. W. Simonton $1,72⁴, the same being the first and second payments on her obligation for the purchase-money of the fee-simple of 640 acres of land, known as her dower in the land of her husband, W. D.

[McCurdy v. Middleton.]

Simonton, as per agreement with me; I having obligated myself to pay Jno. A. Tyson, administrator, for said land, which obligation is dated January 27th, 1869." The evidence as to the payment of the last installment, as asserted in the answer of the defendants, and also as to a subsequent purchase of the residue of the tract by Mrs. A. W. Simonton, is stated in the opinion of the court.

The defendants had executed a mortgage on the 640 acres of land to S. C. Marks, as trustee for Given & Marks; and he, having been made a defendant to the bill, filed an answer alleging payment of the purchase-money, and a cross-bill praying a foreclosure of the mortgage, and a decree devesting the legal title to the lands out of the heirs and administrators of said R. F. Simonton. The chancellor ordered a reference of the matters of account to the register, who reported that the entire purchase-money had been paid. The chancellor confirmed the report, overruling exceptions filed to it by the complainants, and rendered a decree for the defendants; and this decree is now assigned as error by the complainants.

GRIFFIN & COOK, for the appellants, cited 2 Greenl. Ev. § 516; *McLendon & Robinson v. Hamlin,* 34 Ala. 86; *Edmonds v. Edmonds,* 1 Ala. 401; *McDonnell v. Br. Bank,* 20 Ala. 313; *Callahan v. Boazman,* 21 Ala. 246.

W. R. HOUGHTON, with whom was W. L. BRAGG, *contra,* cited *Bobe v. Stickney,* 36 Ala. 483; *Callahan v. Boazman,* 21 Ala. 246.

STONE, C. J.—There is evidently a mistake in the description of the lands, the subject of this suit, if the transcript be a correct copy of the original papers. There is no discrepancy in the various descriptions of the lands in sections 13 and 24. The bill describes and claims relief as to 360 acres in section 14, being the south-east quarter, the south half of the north-east quarter, the east half of the south-west quarter, and the south-east quarter of the north-west quarter. These numbers form a perfect square, bounded east and south by the section lines, and approaching the northern and western lines, within a fourth of a mile. The testimony of Mrs. Middleton varies from this description to this extent: It omits all mention of the south-east quarter, and substitutes the south-west quarter; thus, twice describing the east-half of the south-west quarter, and causing one description to overlap the other. The answers admit the correctness of the descriptions set forth in

the bill, and we suppose the bill is correct as to the lands in 14. It follows that, if this were the only error, it could work no injury, if the bill sets forth the true numbers.

In section 23 there is also a discrepancy. The bill claims relief as to the south half of the north-west quarter. If this be correct, it does not adjoin the other dower lands, but is separated from them by a quarter of a mile. Mrs. Middleton, in her testimony, describes this eighty as the east half of the north-west quarter. This adjoins the lands allotted in 14, and may be the correct description. We have no means of determining which, or whether either, is correct. We have, ourselves, discovered the foregoing discrepancies.

The present bill is by the administrators of Robert F. Simonton, and seeks to enforce a vendor's lien on certain lands sold to Mrs. A. W. Middleton, then Mrs. Simonton. No title was made, but the same was retained by the vendor. It is now in Mrs. Roxana Simonton, widow and sole devisee of Robert F. Simonton. The pleadings and testimony leave no contest or doubt about the following facts: That six hundred and forty acres of land, being the dower tract —that is, the reversionary fee in the same—was sold by R. F. Simonton to Mrs. A. W. Simonton, for the agreed sum of twenty-four hundred dollars, one-third to be paid in cash, one-third at the end of one year, and the remaining third at the end of two years; the deferred payments to draw interest; and that a receipt was given to Simonton for the first and second installments of the purchase-money, bearing date November, 1869, and expressing that they were in payment of said first and second installments. It is shown that, subsequently, Mrs. A. W. Simonton—now Mrs. Middleton—purchased the residue of the tract—960 acres. This purchase preceded the occurrences after mentioned; and there is no attempt at proof that the lands, the subject of the second purchase, were ever paid for. It is thus shown that, at the time Mrs. Middleton claims she paid the third and last installment for the dower land, she owed not only that installment, but an additional, much larger indebtedness, contracted in the second purchase; but it is left in doubt when it matured.

The real and only controversy in this case is, whether Mrs. Middleton has or has not paid the third installment of the dower-land purchase—eight hundred dollars, with its interest. The testimony of three of the witnesses bears on this inquiry, but that of Mrs. Middleton is fullest and most important. Her account of what she relies on as payment is as follows: "The next fall [must have been 1870] I sent

to him [R. F. Simonton], at Statesville, North Carolina, six hundred dollars in money, with accounts against him, enough, as I thought, to pay the balance. . . . Roscoe Wiley was my agent, and, at the time the money was sent, I instructed him to write R. F. Simonton to credit it to the debt due on the reversionary interest, and did not know anything to the contrary until after the death of R. F. Simonton. Have no receipt for the six hundred dollars and the accounts. . . . . For the third payment, I sent him at Statesville, North Carolina, six hundred dollars, and accounts against him for more than would cover the last payment. . . . The last payment was forwarded to him, at Statesville, North Carolina, at the end of the second year [1870], through Given & Marks, Montgomery, Alabama, I think. My agent, Roscoe Wiley, went to Montgomery, at my request, to forward the money. I owed R. F. Simonton for nothing, except the lands purchased." This is all Mrs. Middleton testifies, as to what she claims as payment of the third installment. True, she testifies to other cross demands she has against R. F. Simonton; but she states nothing tending to show any agreement, understanding, or instruction, that they should be applied in liquidation of any debt.

Roscoe Wiley, the agent, testifies as follows: "The said Amanda [A. W. Middleton] paid the seventeen hundred and twenty-eight dollars [first and second installments, with interest]. I was present, and saw R. F. Simonton execute the receipt, dated November 13, 1869. I paid nothing to R. F. Simonton that I recollect of, except about fourteen hundred dollars, as the estimated amount due for his part of the crop for 1869."

A paper, without date or signature, was shown to this witness, and he was interrogated in regard to it. The paper, "Exhibit B," is as follows:

"Amts. paid R. F. Simonton, by Mrs. A. W. Simonton, as last payment on dower part of the Simonton plantation—

To R. Wiley, for services rendered.................$200 00
　　Amt. taxes paid for him, 1869.................　71 28
　　One-half losses on Raphael Williamson........　22 11
　　One-half　"　" Geo. Williamson . ........　22 11

To one-half rent of 10 mules, 1869..............　75 00
　　Credit, date Nov., 1869........ ..............　390 50
　　Ten mules furnished by Mrs. A. W. Simonton for
　　　1869, whereas R. F. Simonton furnished none.
　　Interest on all the above for twelve months.
　　One-half commissions due James Marks & Co.,
　　　on advances to freedmen... .... ..... .......$50 00."

[McCurdy v. Middleton.]

The last item of this account tends to show it was made out about November, 1870.

Roscoe Wiley's testimony in relation to this paper, and the transactions it refers to, is in the following language: "I do not remember how much money A. W. Middleton paid to R. F. Simonton, but do know that she paid large sums of money to him at different times. The receipt for seventeen hundred and twenty-eight dollars, and marked 'Exhibit C,' was written by R. F. Simonton, and delivered in my presence. The greater portion of exhibit 'B' is in my handwriting. I can not say exactly when it was made, but was made at the request of Mrs. A. W. Middleton, to be used in her settlement with R. F. Simonton. The two hundred dollar item was the amount R. F. Simonton instructed A. W. Middleton to pay me, for services rendered for the year 1869, in superintending the farm, when they farmed together. I can not say if the items in exhibit 'B' were the last payment on the dower or not; do not remember; know that I would not have receipted as last payment, unless it had been true. May have intended in said exhibit, part of last payment. I can not say that all of the purchase-money was paid to R. F. Simonton for dower." Witness then goes on to testify of cross demands in favor of Mrs. Middleton, and against R. F. Simonton, but there is nothing which authorizes us to treat them as payments.

Spencer C. Marks is the successor of Given & Marks, and Marks & Co., commission-merchants and cotton-factors, and has charge of their books. He furnishes, with his testimony, an itemized account of all the transactions had by Mrs. Simonton, now Mrs. Middleton, with each of the successive firms, commencing in August, 1868, and coming down to the present time. There is no where in said account any reference to the remittance of six hundred dollars to R. F. Simonton, claimed to have been paid on the third installment of the dower land. The witness testified: "I can not say that I ever saw Mrs. Simonton make any payment to R. F. Simonton." He also testifies further as follows: "I know from conversations with Mrs. Middleton and R. F. Simonton that other payments were made by the former to the latter, but I can not say as to the amount of such payments, or when or where the same were made." Further testifying, he speaks of the receipt for $1,728, payment of the first and second installments of the dower-land purchase, and of the payment, through his firm, by Mrs. Middleton to R. F. Simonton of $1,300, the estimated share of the latter in the crop grown on joint account in 1869.

[McCurdy v. Middleton.]

This witness testified to conversations he had separately with R. F. Simonton and Mrs. Middleton, in the winter of 1872 or 1873, when the latter was seeking to obtain a title to the dower purchase, and the former refused to make it. The substance of this part of his testimony is, that Mrs. Middleton claimed she had made payments to, or had cross-demands against Simonton, amounting to more or quite enough to liquidate the last installment of the dower-land purchase. On this ground, she claimed title to that part of the land. According to his recollection, Simonton did not dispute the amount of Mrs. Middleton's claims, but he claimed the right to apply them to the debt for the second land purchase. He testified to no claim set up in these interviews, either that Mrs. Middleton had ever before instructed or claimed that they should be applied to the dower-land purchase, or that Simonton had in fact credited them on the second land purchase. His entire testimony, in this connection, is, that the opposing parties asserted the conflicting claims set forth above. We have now given what we conceive to be the entire, material testimony bearing on the question of payment.

A debtor, owing to the same creditor more debts than one, and making partial payments, has the right to elect and dictate on which debt the payment shall be credited. This election, however, must be made at the time the payment is made. The right to its exercise is lost, if not then asserted.—Aderholt v. Embry, 78 Ala. 185. If a paying debtor fails to give direction as to the application, the creditor may then elect on which of two or more debts past due he will allow the credit. And if neither expresses any election, then, as between such debts, the presumption of the law is, that the credit is applied most beneficially to the creditor; that is, to the most precarious debt, or the one least secured. It can not, without consent, be applied to an immature debt, when there is an unsatisfied, matured one.—Callahan v. Boazman, 21 Ala. 246; Bobe v. Stickney, 36 Ala. 482; Robinson v. Allison, Ib. 525; Johnson v. Thomas, 77 Ala. 367; Taylor v. Cockrell, 80 Ala. 236.

There is another legal principle, important in its bearing on this case. A cross-demand, no matter how clearly established, is not payment, and can not be treated as such. It can become payment by the agreement of the parties to so treat and liquidate it, and in no other way.— Wharton v. King, 69 Ala. 365.

The unmistakable result of the pleadings and evidence in this case is, that in the sale of the dower tract, credit was given for the payment of the second and third installments.

This devolves on the purchaser, Mrs. Middleton, the burden of proving payment.—*Brigham v. Carlisle*, 78 Ala. 243.

We have carefully considered the testimony in the present record, and the result is, not only that there is no proof tending to show that, when the alleged remittance of six hundred dollars was made to Simonton, any election to have it credited on the dower-land purchase was either made or expressed. The failure of proof on this item is more marked than this. Considered altogether, it amounts to nothing more than that Mrs. Middleton, then Mrs. Simonton, instructed her brother, Roscoe Wiley, to make the remittance. There is no testimony that it was done, but very strong persuasive evidence that it was not done. As to the cross-demands, there is no attempt to prove any agreement by R. F. Simonton to allow them as payments on the dower-land purchase. So we hold, that there is no testimony tending to show payment of the third installment of that purchase. The exception to the register's report ought to have been sustained.

What we have said above relates only to the case made by the pleadings. The original bill avers that the purchase-money is unpaid. The answers admit that the purchase was on time, and plead full payment. No other defense is set up to the relief prayed in the original bill. In the present state of the pleadings, there must be a decree for the complainants in the original bill, for the amount of the third installment, with interest. The lien, however, can only extend to the reversion, or *residuum* of the estate and title, after Mrs. Middleton's dower, or life-estate falls in. She purchased from Simonton only the reversion. He owned no more, and could sell no more. The lien extends only to the interest sold and bought.—*Norman v. Harrington*, 62 Ala. 107. This is the rule of law, if the contract were silent on the subject. But the contract by which Mrs. Middleton purchased the 640 acres—her first purchase—is not silent on this question. Its language is, "in case of failure to pay the $2,400 to the party of the second part (Simonton), her right of dower is to be in no way affected."

It is contended for appellees that, by the very terms of the contract of purchase, all payments made, or cross-demands by Mrs. Middleton, were to be applied to the dower-land purchase. We do not think that the contract will bear that interpretation. In fact, we do not think it had any reference to that question. It is certainly not mentioned in terms, and it would be strange if it were. The second land sale, of the 960 acres, had not then been made, and, for aught we can know, had not been thought of. It

[Turnley v. Hanna.]

would be unusual, if not miraculous, if a contract made in January should have any reference to a contract which was not made until November afterwards.

We have said above that there is no proof of any payment on the third installment of the dower-land purchase, nor, indeed, of any payment, save the first two installments. It follows that, from anything shown in this record, there is no field of operation for the doctrine of the application of payments.

There is probably a mistake in the pleadings, as to the proper numbers of the land, sought to be sold in this case. We will, therefore, reverse and remand the cause, to be further proceeded with according to the principles of this opinion.

Reversed and remanded.

CLOPTON, J., not sitting.