# Bell, *et al. v.* Bell.

*Bill to Foreclose Mortgage.*

(Decided December 19, 1911.  56 South. 926.)

1. *Subrogation; Dower; Purchase Money Lien.*—Where the purchaser of land did not pay the entire purchase price of the land, and procured another to advance him the money to pay the balance due on the land, and for other purposes, and executed a mortgage on the land which was invalid because not properly acknowledged by the mortgagor's wife, the person advancing the money for the purchase price of the land, to that extent, was subrogated to the lien of the vendor, and the right of the purchaser's wife to dower was subject to the lien, but this lien did not cover advances for other purposes.

2. *Interest; Computation.*—In calculating the amount of the lien only simple legal interest could be allowed upon that amount where the mortgagee was subrogated to the lien of the vendor for the amount of advances to the vendee for the payment of the purchase price of the land, under an invalid mortgage which included advances to pay the purchase price of the land, and for other purposes.

3. *Payment; Application.*—Where a debtor owes the same creditor several debts, and makes partial payments, he may select the debt upon which the payment shall be credited, and so direct the payment; but if the debtor makes no selection, it is presumed that credit is applied to the most precarious or least secure debt.

APPEAL from Lowndes Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by N. J. Bell against M. E. Bell and others, to foreclose a mortgage, with cross bill by respondents seeking affirmative relief. From a decree for complainants, respondents appeal. Corrected and affirmed.

W. P. McGAUGH, H. S. HOUGHTON, and GEORGE E. GORDON, for appellant. The controlling question in this case is whether or not the mortgage sought to be foreclosed should be given effect as a purchase money mortgage. If so, the claim of homestead and dower set up in respondent's answer and cross bill would not prevail against it.—*Moses Bros. v. Home Co.,* 100 Ala. 464; Sec. 4162, Code 1907. It is, therefore, of prime importance to ascertain what title to the property N. J. Bell owned at the time of the conveyance, as it would be inequitable to decree the mortgage to be paramount to homestead and dower, in property which the mortgagor owned independently of and prior to the conveyance which gave rise to the indebtedness for purchase money. —*Norman v. Harrington,* 62 Ala. 107; s. c. 77 Ala. 499; *McCurdy v. Middleton,* 82 Ala. 131. The mortgage was not self proving nor executed according to law.—Secs. 3361, 3362, 3374, 3375, 3382, 4001, and 4004, Code 1907. The testimony of V. H. Bell related only to the transaction concerning the mortgage and did not pretend or

purport to prove the execution of the instrument.—
*First Nat. Bank v. Chaffin*, 118 Ala. 246. Under the ev-
idence it is clearly inferable that N. J. Bell paid the
full amount of the mortgage debt owing by W. H. Bell
to Woolsey, and that no interest in said land remained
in her, and as she was not a mortgagee in possession at
the time of the conveyance, purporting to be a quit
claim deed from the Woolseys to N. J. Bell it was a nul-
lity.—*Duvall v. McClosky*, 1 Ala. 708; *Welch v. Phillips*,
54 Ala. 309. Under the evidence it devolved upon com-
plainant to prove clearly and satisfactorily that his
claim occupied a class exempt from the operation of the
right of dower, and the exemption statute.—*Adams v.
Adams*, 127 Ala. 516; 6 Enc. of Evid. 529; 10 Enc. of
Law, 140. Where there is more than one debt and par-
tial payments are made, the court will apply them to
the oldest debt.—30 Cyc. 1243. All of the accounts
were blended into one, and hence, the various parts had
no existence, but the balance only is considered due,
and credits are applied by law to the items of the ac-
count first accruing, although some of the items are bet-
ter secured than others.—*Harrison v. Johnson*, 27 Ala.
447; *Bobs v. Stickney*, 36 Ala. 482; *Moses v. Noble*, 86
Ala. 412; *Connor v. Armstrong*, 91 Ala. 266; *Stickney
v. Moore*, 108 Ala. 597; Sec. 4622, Code 1907. Only ti-
tle acquired by N. J. Bell was the two tracts less the
homestead and dower and consequently he could sell
nothing more than he acquired.—Authorities supra.

RAY RUSHTON, and W. M. WILLIAMS, for appellee.
The right of homestead does not prevail over a vendor's
lien or a purchase money mortgage.—*Newbold v. Stew-
art*, 67 Ala. 326; *Tyler v. Jewitt*, 82 Ala. 93; *Ross v.
Merry*, 105 Ala. 535; *Moses Bros. v. Home Bldg. & Loan
Assn.*, 100 Ala. 470; Code, Sec. 4162. A widow has no

[Bell, et al. v. Bell.]

right of dower against a purchase money mortgage.— *Eslava v. LaPatre,* 21 Ala. 504, 528; *Boynton v. Sawyer,* 35 Ala. 497, 500. A bill to establish dower will not lie unless it is shown that the widow's husband paid the entire purchase price prior to the time of his death.— *Lipscomb v. DeLemos,* 68 Ala. 592, 593. The burden of proving the payment of the purchase money is on the party setting up dower.—*Edmondson v. Montague,* 14 Ala. 370, 374. A bill with a double aspect embracing alternative averments for relief is permissible under the Alabama practice, if each aspect entitles the complainant to substantially the same and not inconsistent and repugnant reliefs.—*Wimberly v. Montgomery Fertilizer Co.,* 132 Ala. 107, 112. When there is a *running account* between creditor and debtor, such as merchant and customer or factor and commission merchant, where there is no agreement between them as to how payments shall be applied, the law will apply them to the oldest item, unless it would be inequitable or unfair to the creditor to do so.—Authorities cited in appellant's brief. But where a debtor owes two or more *separate debts* to one creditor, and makes a partial payment he may direct to which debt it shall be applied; and this right must be asserted at the time the payment is made, and if not then asserted, the right of election devolves on the creditor, as between the debts past due, and if no application is made by either party at the time the payment is made, the law applies it to the one most beneficial to the creditor.—*McCurdy v. Middleton,* 82 Ala. 131; *Johnson v. Thomas,* 73 Ala. 367, 369.

SIMPSON, J.—The bill, in this case, was filed by the appellee for the foreclosure of a mortgage for $5,000, purporting to be signed by W. H. Bell and his wife, M. E. Bell, upon which there appears a general acknowl-

29—174

edgment, but no separate acknowledgment, by the wife. Said mortgage is dated October 1, 1894, and the complainant produces a deed by him to said W. H. Bell for the same amount, dated September 29, 1894, claiming that said mortgage was given for the purchase money of said land. The deed is a quitclaim.

The defense set up by the answer and cross-bill is that said M. E. Bell has never released or conveyed her dower interest in said land, nor so conveyed as to include her homestead rights in said land, a part of which, she shows, was occupied as a homestead by her husband, and by herself since his death. She also produces transcripts of the proceedings in the probate court, by which said lands were allotted to her as a homestead after the death of her husband. She also claims that the indebtedness of her deceased husband to N. J. Bell has been satisfied.

The answer to the cross-bill sets up the facts that on May 10, 1886, said W. H. Bell purchased the land, described as the Reid place, from commissioners appointed by the probate court, and, "not having the money with which to comply with his said purchase, he borrowed the same from V. H. Bell, and executed to him a mortgage for the sum of $951.35;" "that on the 8th day of March, 1887, the said V. H. Bell transferred said mortgage and notes secured by it to Marks & Gayle as collateral security, but afterwards redeemed the same, and on the 16th day of June, 1890, for value received, transferred said mortgage and notes secured by it to N. J. Bell as collateral security for a debt owing by said V. H. Bell to said N. J. Bell;" that said notes and mortgage have never been paid; that V. H. Bell foreclosed said mortgage October 29, 1888, John W. Harris being the purchaser for $1,045; that a deed was made by said V. H. Bell to said Harris, and said Harris subsequently,

on December 12, 1891, conveyed the lands to said N. J. Bell.

It is also alleged that on December 15, 1883, said W. H. Bell purchased the remaining lands, known as the Dunklin place, from E. C. Dunklin, receiving a deed thereto, and "contemporaneously with the execution of said deed borrowed the sum of $1,500 from Milthorn Woolsey," using the money to pay a part of the purchase money on said purchase, and executing a mortgage to secure the payment of the same on said land; that said Woolsey sold and transferred said notes and mortgage to said N. J. Bell; that thereafter said E. C. Dunklin filed a bill in the chancery court against W. H. and N. J. Bell for a balance of purchase money due, and said court, holding that Dunklin's claim was superior to the Woolsey mortgage, rendered a decree in his favor for $386, and said decree was paid by said N. J. Bell to protect his interest; that said W. H. Bell never paid said amounts, but became largely indebted to said N. J. Bell, from time to time, for goods, wares, and merchandise advanced to him; that, in order to give said W. H. Bell a chance to pay for said lands and "get the indebtedness between them in a more definite shape;" etc., said W. H. Bell, by quitclaim deed, on September 27, 1894, conveyed said lands to said N. J. Bell for a recited consideration of $5; that the only effect of said deed was to convey his equity of redemption in the Dunklin place, and any equity he might have in the Reid place; that the deed of N. J. Bell to said W. H. Bell, of September 29, 1894, was contemporaneous with said last-named deed, and the $5,000 mentioned as the consideration in said deed of N. J. to W. H. Bell represented "part of the money owing by the said W. H. Bell to said N. J. Bell;" and that "for the said $5,000 purchase money agreed upon the said W. H. Bell did, contempo-

raneously with the execution of said deed, execute and deliver" the mortgage in question for the consideration of $5,000, "which was the agreed purchase money of the lands owing by said W. H. Bell;" that at that time said W. H. Bell owed on account of the purchase money of the Reid place, with interest, $1,540.73, and on account of the purchase money of the Dunklin place, and interest, $2,813.49, and on account of advances, etc., $6,-170.43. Said answer mentions the proceeds of an insurance policy and other items that have been credited on the general account of said W. H. Bell.

These same facts were set up in an amendment to the original bill, and the answer denies that the said M. E. Bell ever acknowledged the mortgage in question, and claims her dower and homestead in the lands. She testifies, also, that she never appeared before the justice of the peace who purports to have taken the acknowledgment.

From this summary of the facts, which seem to be without conflict, if said W. H. Bell ever paid for the lands in question, his said widow, not having released her dower and homestead rights according to law, her rights are superior to the mortgage, provided she sustains her claim that she did not acknowledge the mortgage in question. The purchase money was paid, so as to vest the legal title in the vendee, but subject to the equitable rights of the complainant. So the question of prime importance is: Did the transactions detailed constitute a payment of the purchase money by W. H. Bell, or were the several mortgages for money borrowed to pay purchase money such as to preserve the purchase-money lien in favor of the mortgagees?

This court has held that one who advances money to a vendee to pay the deferred payments on land, or pays the amount to the vendor, at the vendee's request, has

no vendor's lien or resulting trust.—*Chapman et al. v. Abrahams,* 61 Ala. 108.

In a subsequent case, in which it was alleged that Mrs. B., "while negotiating said loan, told complainant that she wanted the money to pay off a former mortgage on her house and lot, and when she got the money did use the same for that purpose, and thereby discharged said prior mortgage," this court, while recognizing the principle just stated, says: "But the rule is settled, that, where money is expressly advanced in order to extinguish a prior incumbrance, and is used for this purpose, with the just expectation on the part of the lender of obtaining a valid security, or where its payment is secured by a mortgage which, for any reason is adjudged defective, the lender or mortgagee may be subrogated to the rights of the prior incumbrancer, whose claim he has satisfied; there being no intervening equity to prevent." And it was held in that case that the money was obtained by false representations as to owning a fee-simple estate, and complainant was entitled to recover.—*Bolman v. Lohman,* 74 Ala. 507, 508-511, 512. This case states the general principle, but decides the case on the fraudulent representation, which deos not exist in the present case.

In the case of *Tyler v. Jewett,* 82 Ala. 93, 101, 2 South. 905, the bill was filed to cancel a mortgage on a homestead, to which there was no separate acknowledgment by the wife, said mortgage having been given for money advanced to enable the borrower to pay purchase money, and thereby convert his equitable title into a legal title; and this court, while recognizing the principle of the *Chapman-Abrahams Case, supra,* said: "It would be inequitable to deprive defendant of the advantages of the legal title, without requiring repayment of the purchase money paid by him, only by reason of which

payment complainant would be entitled to demand it of his vendor."

The case of *Faulk et al. v. Calloway,* 123 Ala. 325, 26 South. 504, is not analogous to this case, as in that the purchaser assumed to pay off the mortgage, as a part of the purchase money, under a contract of sale which afterward failed.

The principle announced in *Bolman v. Lohman, su- pra,* was applied to a case where the party loaned money for the purpose of paying off a purchase-money incumbrance, and took a mortgage on the land to secure the same, which mortgage failed because of a defective acknowledgment.—*Scott v. Land, Mortgage, Investment, etc., Co.,* 127 Ala. 161, 28 South. 709. This principle was declared operative, also, in favor of one who paid off an existing mortgage, and took a mortgage on the land, which was inoperative by reasons of lis pendens.—*Bigelow v. Scott,* 135 Ala. 236-239, 33 South. 546.

Pomeroy says: "The doctrine is also justly extended, by analogy, to one who, having no previous interest, and being under no obligation, pays off the mortgage, or advances money for its payment, at the instance of a debtor party, and for his benefit; such a person is in no true sense a mere stranger and volunteer."—3 Pomeroy, Eq. Jur. (3d Ed.) § 1212, pp. 2423, 2424. It is applied also to one who makes a loan to discharge a first mortgage, under an agreement that he shall have a first mortgage, as against a second mortgagee.—*Home Sav. Bank v. Bierstadt,* 168 Ill. 618, 48 N. E. 161, 61 Am. St. Rep. 146; *Amick v. Woodworth et al.,* 58 Ohio St. 86, 50 N. E. 437 .

It is said that: "The better opinion now is that one who loans his money upon real estate security, for the express purpose of taking up and discharging liens or

incumbrances on the same property, has thus paid the debt at the instance, request, and solicitation of the debtor, expecting and believing, in good faith, that his security will, of record, be substituted in fact in place of that which he discharges, and is neither a volunteer, stranger, nor intermeddler; nor is the debt, lien, or incumbrance regarded as extinguished, if justice requires that it should be kept alive for the benefit of the person advancing the money, who thereby becomes the creditor."—*Emmert v. Thompson,* 49 Minn. 386, 392, 52 N. W. 31, 32 (32 Am. St. Rep. 566) ; *Hughes v. Thomas,* 131 Wis. 315, 111 N. W. 474, 11 L. R. A. (N. S.) 744, 11 Am. & Eng. Ann. Cas. 673 and note 677 et seq.

"Where defendant loaned money to plaintiff on an agreement that it was to be used to pay off existing valid mortgages on exempt personal property, and that a new mortgage should be executed to defendant therefor, and the mortgage subsequently executed was void, because the signature of the mortgagor's wife was not witnessed as required by statute, the lien of the mortgages, paid by the funds advanced, was not destroyed, but would be enforced in equity for defendant's benefit, who would be subrogated to the rights of the holders, as against the mortgagor and his wife."—*Lashua et ux. v. Myher,* 11 Wis. 18, 93 N. W. 811.

We hold that in the present case, the money having in each instance been advanced for the express purpose of paying the purchase money, or a part of it, with an agreement for a mortgage on the premises, which was not so executed as to be effective, and it being shown that without said payment the legal title to the land could not have been secured by the vendee, under the equitable principles, above cited, the original lien for the purchase money is preserved for the benefit of the complainant. This right is by subrogation to the

rights of the original vendor, and not a right to enforce the mortgage sought to be foreclosed, for the amounts therein named; for, while W. H. Bell could, in so far as he was concerned, agree that the $5,000 represented the purchase money still due on the land, yet that agreement could not affect the rights or interest of his wife.

By subrogation, the complainant is entitled to subject the lands, as against the respondents, to the payment of whatever amount is found to be due of the original purchase money advanced, but not for the amounts due on other accounts by said W. H. Bell. While there is no special prayer for subrogation, yet probably it may be covered by the prayer for general relief.

In so far as there was a lien in favor of N. J. Bell against the lands, it was competent for said N. J. and W. H. Bell to put the indebtedness in the shape of a mortgage, thereby expressing only what the law required; but, as against the rights of the respondents, they could not by said agreement fix a lien upon the lands for any other indebtedness, so that the amount for which said mortgage may be foreclosed is not necessarily the amount named therein, but the amount actually due for the money advanced to pay purchase money.

The decree will be corrected so as to provide that the register, in taking and stating the account, shall ascertain what amounts were advanced to pay the purchase money for the lands described, what payments have been made thereon, and what amount is now due, calculating at simple legal interest only. To this extent, the second prayer of the cross-bill is granted, but the cross-complainant is not entitled to have the mortgage declared null and void; nor is she entitled to dower and homestead, until the lien in favor of the complainant is satisfied.

[Bellview Cemetery Co. v. McEvers.]

As there seems to be some confusion in regard to the application of payments, it seems necessary to state that the rule applicable to this case is that "a debtor, owing to the same creditor more debts than one, and making partial payments, has the right to elect and dictate to which debt the payment shall be credited;" but if neither the debtor nor creditor expresses an election "the presumption of law is that the credit is applied most beneficially to the creditor; that is, to the most precarious debt, or the one least secured."—*McCurdy v. Middleton,* 82 Ala. 131-137, 2 South. 721, 724.

As corrected, the decree of the court is affirmed.

Corrected and affirmed. All the Justices concur, save DOWDELL, C. J., not sitting.