(116 So. 915)

**ALISON et al. v. PATRICK. (6 Div. 911.)**

Supreme Court of Alabama. Oct. 13, 1927.

Rehearing Granted May 17, 1928.

**1. Subrogation ☞33(1)—Generally, subrogation may be enforced against liens and claims subordinate to that discharged.**

Generally, right of subrogation may be enforced against liens and claims which are subordinate to the lien or mortgage discharged.

**2. Subrogation ☞36—Mortgagees advancing money to purchaser to complete contract held not entitled to subrogation as against such purchaser and subsequent purchaser.**

Where persons advancing money to purchaser of real estate to pay balance of purchase price took a mortgage as security for such loan, they were not entitled to subrogation to title and lien of vendor as against purchaser, and one subsequently purchasing property, since such subsequent purchaser would thereby be placed in a more unfavorable position than he

─────────────

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

would have occupied, had original vendor continued as such under his contract of sale.

Appeal from Circuit Court, Jefferson County; William M. Walker, Judge.

Bill in equity by E. L. Patrick and others, wherein respondents Alison filed a cross-bill. From a decree for complainant, the named respondents appeal. Affirmed on rehearing.

The bill is filed by complainant, Patrick, against the West Real Estate & Insurance Company, a corporation, C. B. West, as secretary, and Frank Stollenwerck, as vice president of said corporation, and B. R. and B. L. Alison.

In substance, the bill alleges the purchase by complainant from the West Real Estate & Insurance Company of real estate mentioned and at the price and under the terms and conditions set out in a lease sale contract dated March 27, 1920; and exhibited with the bill; that the complainant was put into possession of the property and made payments under the contract, paid the taxes thereon, etc.; that on July 14, 1923, the West Real Estate & Insurance Company executed and delivered to complainant another lease sale contract (copy of which is exhibited) touching the said trade, sale, and purchase of the property mentioned in the former instrument; that at that time complainant was yet in possession of the property, exercising acts of ownership; that complainant has paid the entire consideration for said property with the exception of about $335. It is further alleged that the respondents Alison claim to have a mortgage or other incumbrance on the property involved, given them by the West Real Estate & Insurance Company long after the contract between that corporation and complainant, after large payments had been made by complainant under his contract and while he was in actual, notorious, adverse, and exclusive possession of the property; that the alleged mortgage of said Alisons is upon the records of Jefferson county and constitutes a cloud upon his title.

The prayer is for cancellation of the Alison mortgage as a cloud upon his title, and for ascertainment of the amount due by complainant to West Real Estate & Insurance Company, and that upon payment by him of the amount so ascertained proper conveyance be made to him.

The respondents B. R. and B. L. Alison made their answer a cross-bill and alleged that at the time the contracts mentioned in the bill were entered into between complainant and the West Real Estate & Insurance Company, one S. J. Brintle was the owner of the property involved, and had entered into a lease sale contract, of like character to those mentioned in the original bill, to lease the same to the West Real Estate & Insurance Company for a certain time and under certain conditions, and upon compliance with its terms was to execute and deliver to said West

Company a conveyance of the property; that, upon information and belief, said West Company failed to comply with the terms of said lease sale contract with said Brintle and defaulted in the payments therein provided; whereupon said Brintle elected to declare said lease sale contract forfeited and did forfeit said contract; that the said West Company upon advice of counsel and in order to avoid said forfeiture, and being without funds with which to pay the balance of the purchase price of said property to said Brintle, procured from cross-complainants, through their duly authorized agent, H. L. Alison, a loan of $1,500 in order to pay off the balance of said purchase price due said Brintle, and to obtain legal title to said property; that it was agreed that cross-complainants should obtain a first mortgage upon the property as security for said loan; that said money was so furnished, the sum of $1,393 was paid to said Brintle as balance of purchase price for said property, and that thereupon said Brintle and wife executed and delivered to said West Company a warranty deed to said property, dated February 22, 1924, and recorded in the probate office; that as a part of the same transaction said West Company executed to cross-complainants to secure the loan of $1,500 a mortgage upon the property dated February 21, 1924, and recorded in the probate office. It is further alleged that no part of the principal indebtedness secured by said mortgage has been paid, that the same is past due, subject to foreclosure, and is a valid lien upon the property, prior and superior to any rights of the original complainant in and to the property.

The prayer is for a foreclosure of the mortgage and for general relief.

The respondents West Real Estate & Insurance Company, C. B. West, and Frank Stollenwerck filed formal answers to the mentioned pleading, admitting the material allegations of the original bill and denying those of the cross-bill.

The trial court by final decree confirmed the report of the register held after reference on order of the court, ascertaining the amount due and owing by original complainant under his contract with the West Real Estate & Insurance Company, and decreed that upon payment of same, with interest, into the registry of the court, complainant, Patrick, was entitled to have vested in him all right and title claimed or held by the respondents in and to the property; that the cross-bill seeking foreclosure of the Alison mortgage was without equity; and that said mortgage be canceled and marked satisfied on the record. It was further decreed that respondents Alison were entitled to receive the amount ascertained to be due by complainant to respondent West Real Estate & Insurance Company.

From the decree the respondents (cross-complainants) B. R. and B. L. Alison alone appeal.

Haley, Woolverton & Haley, of Birmingham, for appellants.

A party, paying off prior liens or mortgages on real estate, is entitled by subrogation to the rights of such prior lienholders. Woodruff v. Satterfield, 199 Ala. 477, 74 So. 948; Cook v. Kelly, 200 Ala. 133, 75 So. 953; Hampton v. Counts, 202 Ala. 331, 80 So. 413. And this notwithstanding the prior lien is satisfied rather than transferred to the new mortgagee. First Ave. C. & L. Co. v. King, 193 Ala. 488, 69 So. 549. One obtains full equity when he receives the premises in the same condition as to prior liens in which they were when sold to him. Ruse v. Bromberg, 88 Ala. 619, 7 So. 384; Scott v. Land Co., 127 Ala. 161, 28 So. 709.

Arthur L. Brown, of Birmingham, for appellee.

Appellee being in the actual, open, obvious possession of the premises, which is the highest character of notice, it was the duty of appellants, before making a deal with reference to said property, or lending money thereon, to inquire as to his right of possession, which they wholly neglected. Randolph v. Billing, 115 Ala. 689, 22 So. 468; Watts v. Eufaula Bank, 76 Ala. 474; Carter v. Lehman-Durr & Co., 90 Ala. 126, 7 So. 735; Pettus v. McKinney, 74 Ala. 108; Scott v. Land, Mtg. Co., 127 Ala. 161, 28 So. 709; Gainer v. Jones, 176 Ala. 408, 58 So. 288; Kirby v. Bank, 102 Miss. 190, 59 So. 10; 2 Pomeroy's Eq. Jur. § 613; 3 Pomeroy, § 1211; 7 Mayfield's Dig. 727; 24 A. & E. Ency. Law, 190, 199, 224, 281.

SOMERVILLE, J. The doctrine of conventional subrogation is of universal recognition, and its principles have often been stated and applied by this court. Bell v. Bell, 174 Ala. 446, 56 So. 926, 37 L. R. A. (N. S.) 1203 (reviewing earlier cases); First Ave. C. & L. Co. v. King, 193 Ala. 488, 69 So. 549; Cook v. Kelly, 200 Ala. 133, 75 So. 953.

In Bell v. Bell, supra, we approved a statement of the law by the Supreme Court of Minnesota in Emmert v. Thompson, 49 Minn. 386, 392, 52 N. W. 31, 32, 32 Am. St. Rep. 566, as follows:

"The better opinion now is that one who loans his money upon real estate security, for the express purpose of taking up and discharging liens or incumbrances on the same property, has thus paid the debt at the instance, request, and solicitation of the debtor, expecting and believing, in good faith, that his security will, of record, be substituted, in fact, in place of that which he discharges, is neither a volunteer, stranger, nor intermeddler, nor is the debt, lien, or incumbrance regarded as extinguished, if justice requires that it should be kept alive for the benefit of the person advancing the money, who thereby becomes the creditor."

This statement is quoted by Judge Freeman in his note to Am. Bonding Co. v. Bank, 97 Md. 598, 55 A. 395, 99 Am. St. Rep. 466, 517.

The benefit of the doctrine will be extended to such a person, as this court has said, "where that course will best serve the substantial purposes of justice and the true intention of the parties." First Ave. C. & L. Co. v. King, supra; Scott v. Land, Mortg. Co., 127 Ala. 161, 28 So. 709; Bigelow v. Scott, 135 Ala. 236, 33 So. 546.

There is some difference of opinion as to the necessity, or not, of an *express* agreement to keep alive the original security for the benefit of him whose money has paid the debt, or at least of an *express* agreement to substitute therefor a new security which shall be a first lien on the property. "The generally accepted view at the present time, however, is that it is not necessary that there should be an express agreement that the prior lien shall be kept alive for the benefit of one advancing money to pay it, or that it be assigned, but if, from all the facts and circumstances surrounding the transaction it is clearly to be implied that it was the intention of the parties that the person making the advance was to have security of equal dignity with that discharged then equity will so decree. In such cases equity, speaking from the standpoint of good conscience, substitutes the person so paying the debt to the place of the original creditor, so far as to enable him to enforce the security for the purpose of reimbursement." 25 R. C. L. 1340, § 24.

[1] The general rule is that the right of subrogation may be enforced as against liens and claims which are subordinate to the lien or mortgage discharged. N. E. M. Sec. Co. v. Fry, 143 Ala. 637, 42 So. 57, 111 Am. St. Rep. 62; Fidelity, etc., Co. v. Richeson, 213 Ala. 461, 105 So. 193; note, 99 Am. St. Rep. 480, 481. But as observed by Judge Freeman (99 Am. St. Rep. 518):

"A prime consideration in such cases, however, is that the restoration of the discharged lien may be made without putting the holder of the second incumbrance in any worse position than if the prior lien had not been discharged." Straman v. Rechtine, 58 Ohio St. 443, 51 N. E. 44; London, etc., Mtg. Co. v. Tracy, 58 Minn. 201, 59 N. W. 1001; Wilkins v. Gibson, 113 Ga. 31, 38 S. E. 374, 84 Am. St. Rep. 204, 222.

On the facts alleged in their cross-bill, the respondents Alison are unquestionably entitled to subrogation to the title and lien of the vendor, Brintle, as against his vendee, the West Real Estate & Insurance Company, whose purchase-money debt he paid; and also as against the West Company's vendee, the complainant Patrick, provided that the substitution of the Alisons for Brintle as unpaid vendor does not increase Patrick's burden, or place him in a more unfavorable position than he would have occupied, had Brintle continued to be the vendor creditor of the West Company, under his contract of sale to that company.

The argument against subrogation, quoting

from the brief of Patrick's counsel, is as follows:

"The debt owing to Brintle by the said West Company must necessarily have been paid by it, under the terms of contract, or in a lump sum; and had the appellant Alison not volunteered to pay it, the said company must needs have done so, from the funds paid to it by Patrick, or otherwise acquired; for had payments to Brintle ceased, his lien would have been enforced, with notice, necessarily, to Patrick in possession of the property. Patrick would thus have had an opportunity to divert the payments he was' making to the West Company to the clearing up of this lien upon his property, thus conserving his interest and equities. The intermeddling of appellants, in lending said corporation money, enabled it to extend the matter, and, by deferring repayment of the amount, obviated the necessity of applying the money it collected from Patrick to its original debt owing to Brintle. If appellants had kept out of the affair and had not intermeddled, the money paid by appellee to the said West Company would have been paid by it to Brintle, and the said lien would have thereby been discharged; otherwise, had the West Company failed to pay under the contract with Brintle, an enforcement of his vendor's lien by Brintle would have been attempted, or made, and the appellee in possession of the premises must needs have had notice thereof, and would have been permitted in equity and good conscience to divert his payments of money from the said corporation, to its proper channel, the extinguishment of this lien. This right the appellants precluded by their failure to give any notice whatsoever to appellee. They do not come into equity with clean hands, and cannot look to the appellee in this cause for the payment of their indebtedness against the said West Real Estate & Insurance Company."

This reasoning is not without a degree of plausibility, but its assumptions of fact are wholly speculative, and its conclusions therefore untenable. Had the West Company failed to pay installments to Brintle as they fell due, Brintle might or might not have pressed for their payment; and, had he pressed, he might himself have been induced to extend the debt in whole, or to have assigned his title and contract to any third person who might be willing to carry it on. In either case, Patrick could not have complained of an extension of credit to the West Company by Brintle or by his assignee, without notice thereof to himself, as being in violation of his own rights as subpurchaser, or as being prejudicial thereto. Brintle was under no obligation to notify Patrick of his title reserved as security for the unpaid purchase money, even had he known of Patrick's purchase; and had the Alisons inquired as to Patrick's possession, and become actually informed of his outstanding contract of pur-

chase, it would have been no impediment to their acquisition of Brintle's paramount title, with its accompanying rights and obligations. The only question seems to be whether, in such a case, the Alisons would have been in duty bound to advise Patrick of their relation to the property and warn him of their claim, so that he might protect himself in some way. Our view of that situation does not sustain the theory of such a duty. And when in moral and equitable effect the Alisons are substituted to the position of Brintle, we are unable to see any material change in the rights and obligations of the parties.

Our conclusion is that there is no equitable barrier to the respondents' equitable right to subrogation and that the trial court erroneously sustained the demurrer to the cross-bill.

It is true, the cross-bill omits any specific prayer for subrogation, but, under its allegations of fact and its general prayer, the cross-complainant was entitled to that relief. Bell v. Bell, 174 Ala. 446, 456, 56 So. 926, 37 L. R. A. (N. S.) 1203. The only relief that can be properly decreed on the cross-bill is subrogation to the title of Brintle and to his rights as an unpaid vendor in the sum of $1,393, with decree for enforcement according to the terms of the contract.

The decree appealed from will be reversed, and a decree will be here rendered overruling the demurrer to the cross-bill and remanding the cause for further proceedings.

Reversed, rendered, and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.

On Rehearing.

SOMERVILLE, J. [2] The court, sitting in full bench, has reviewed this case very thoroughly. The principles of law as stated above are approved, but my associates are unanimously of the opinion that a proper application of those principles must result in a denial of the cross-complainant's equity of subrogation, because the restoration of the discharged claim cannot be made without putting the complainant, as holder of the second incumbrance, in a worse position than he would have been in had the prior claim not been discharged.

The question is one of obvious delicacy and difficulty, and I have yielded my original views to the judgment of the majority. It results that the application for rehearing is granted, the judgment is set aside, and the decree of the circuit court is affirmed.

Affirmed.

All the Justices concur.